**BOATMEN'S BANK OF SOUTHERN MISSOURI, f/k/a Boatmen's National Bank of Cassville, Plaintiff–Appellant,**

v.

**Oliver FOSTER, Defendant,**

and

**Lucinda Earlene Harber, Movant–Respondent.**

**No. 19030.**

Missouri Court of Appeals, Southern District, Division One.

June 22, 1994.

---

Lincoln J. Knauer, Mark D. Pfeiffer of Farrington & Curtis, Springfield, for plaintiff-appellant.

Craig A. Smith, of Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for movant-respondent.

MONTGOMERY, Judge.

Boatmen's Bank of Southern Missouri (Bank)[1] appeals a trial court judgment enjoining the execution sale of certain Stone County real estate. In that judgment, the court (1) quashed the execution and (2) permanently enjoined the Bank from levying upon the real estate.

On January 16, 1992, the Bank filed a petition with the Stone County Circuit Court, seeking a judgment against Oliver Foster on an unpaid promissory note. Foster did not oppose the Bank's action, and on March 5, 1992, the court entered a money judgment in the Bank's favor for the amount of the note and related costs and interest. The next month, the Bank sought to enforce the judgment by levying execution upon a 46–acre tract. Foster had previously listed the tract as an asset on a financial statement he submitted to the Bank,[2] and the Bank believed Foster owned an undivided one-half interest in the property.

Subsequently, Lucinda Earlene Harber (Foster's ex-wife) filed a motion to quash the execution sale of this property and to enjoin the Bank from levying upon it. In her motion, Harber explained that when she and Foster were divorced in 1975, each of them was awarded an undivided one-half interest in the 46 acres. More importantly, she claimed that in 1989 (prior to the Bank's money judgment and commencement of execution) Foster had conveyed his one-half interest to her in a handwritten deed. Harber stated that Foster made this conveyance in

---

1. The Bank's former name is Boatmen's National Bank of Cassville.

2. On this financial statement, Foster appears to have listed the tract as 40 acres. The legal description of the property, however, indicates it is "46 acres more or less."

lieu of certain child support and medical payments, which Foster owed her. The deed was not recorded, however, until May 15, 1992—two and a half weeks after the Bank levied execution on the property.

In response to Harber's motion, the court initially ordered a temporary injunction against execution sale of the property. Then, on July 27, 1993, it quashed the execution sale and permanently enjoined the Bank from attempting to enforce its judgment against Foster by selling or levying upon the 46 acres. This appeal followed.

The Bank's first point relied on reads as follows:

> The trial court improperly applied the law to the facts it found to exist: having found that the handwritten deed, divesting judgment debtor (Respondent Foster) of any interest in the property, was fraudulently contrived *after* Boatmen's obtained its judgment against Foster, the trial court should have declared the handwritten deed "... clearly and utterly void" under section 428.020, RSMo., or its successor, set it aside, and permitted the bank to foreclose on its judgment lien. The trial court failed to do so, thereby committing error.

For at least two reasons, this point must fail.

■■■ The first reason rests on the principle that an appellate court will not find trial court error on an issue that was never presented to the trial court for decision. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982). By claiming that the trial court should have set the deed aside after declaring Foster's handwritten deed "clearly and utterly void," the Bank raises an issue on appeal that it never presented to the trial court for decision. In fact, during the July 24, 1992, hearing held to consider evidence regarding Harber's motion, the Bank led the court to believe that setting aside the handwritten deed was *not* an issue.

In the course of that hearing, the Bank offered into evidence the previously mentioned financial statement on which Foster had listed the 46 acres as an asset. Counsel for Harber objected to the introduction of this document. As part of that objection,

Harber's attorney said, "I would also remind the Court that there is no—there is no pleading here moving to set aside the [handwritten] deed. We're not here to set aside the deed." Counsel for the Bank immediately responded: "That's correct, Your Honor. I'm offering this [document] for the purpose of impeachment of Mr. Foster's testimony that he did not represent to Boatmen's National Bank that he owned interest in a certain piece of property which is at issue in this litigation."[3]

To paraphrase our Supreme Court in *Lincoln Credit Co.*, the Bank's contention on appeal (that the trial court should have set aside the deed after declaring it void) "[was] not presented to the trial court and it has long been stated that this Court will not, on review, convict a lower court of error on an issue which was not put before it to decide." 636 S.W.2d at 36.

■■■ The second major flaw in this first point has to do with the Bank's assertion that the trial court "found that the handwritten deed, divesting judgment debtor (Respondent Foster) of any interest in the property, was fraudulently contrived *after* Boatmen's obtained its judgment against Foster." The trial court made no such finding.

As part of its judgment quashing execution and enjoining levy upon the 46 acres, the trial court addressed some of the arguments the Bank had presented. In so doing, the court made the following comment: "The plaintiff [Bank] further disputes the actual existence of the handwritten deed dated April 1, 1989, which contention is supported by the evidence that the signature of the defendant [Foster] was not notarized until May 15, 1992." From this lone sentence, the Bank argues that the trial court *found* that the handwritten deed was fraudulently contrived.

When read in context, however, the court's comment does not support the Bank's position:

> Based upon the evidence, testimony, arguments and suggestions presented, the court finds that [Harber's] motion to quash

execution should be sustained. As stated in *Max Stovall Construction Company v. Villager Homes, Inc.,* 754 S.W.2d 5 (E.D.Mo.App., 1988) a judgment debtor (the plaintiff bank in this case) does not have a sufficient interest in the property to contest the validity of an unrecorded deed, even though the unrecorded deed in [sic] not valid except between the parties and others who have actual knowledge thereof. Plaintiff refers to *Davis v. Owenby,* 14 Mo. 170 (1851) for the proposition that absent fraud, the purchaser must be a *bona fide* purchaser of property who failed to record his deed. *The plaintiff further disputes the actual existence of the handwritten deed dated April 1, 1989, which contention is supported by the evidence that the signature of the defendant was not notarized until May 15, 1992.* Plaintiff bank suggests that because the handwritten and unattested deed was not recorded until after the bank requested execution, that the *Stovall* decision should be distinguished. The court disagrees.

(Second emphasis added.) The italicized sentence does no more than describe or explain one of the Bank's arguments before the court. The same is true of the sentence that immediately precedes and the one that immediately follows.

 Although the italicized sentence could have been more artfully written, its meaning is plain: the Bank claimed that the handwritten deed did not exist before the Bank executed on the property, and the Bank supported that claim with evidence that Foster's signature was not notarized until May 15, 1992. Such language does not indicate that the trial court agreed with the Bank's claim, and none of the court's statements implies that the court found the deed was "fraudulently contrived." Consequently,

---

4. In the argument section of its brief, the Bank correctly maintains that a judgment lien attaches to real estate on the date of the judgment, and any conveyance by the judgment debtor thereafter is subject to the judgment lien. Therefore, the Bank argues that the trial court ignored the legal effect of its judgment lien and erroneously "focused on whether [Bank's] judgment lien constituted an 'interest' in the subject property sufficient to entitle it to priority over Respondent Harber."

the fundamental premise underlying the first point fails—as does the point itself.[4]

The second point relied on would require discussion only if the Bank prevailed on Point I. Because we have rejected the Bank's first contention, we likewise reject the second.

For the foregoing reasons, the judgment of the trial court is affirmed.

PARRISH, C.J., and SHRUM, J., concur.

This hypothesis of error does not appear in either of the Bank's points relied on. An appellate court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not preserved for review. *Mashburn v. Tri–State Motor Transit Co.,* 841 S.W.2d 249, 252 (Mo.App.1992); *Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 325 (Mo.App.1991).