Dale L. **HELMIG**, Movant/Appellant,

v.

**STATE of Missouri,**
Respondent/Respondent.

No: ED 76067.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 23, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 19, 2001.

Application to Transfer Denied
April 24, 2001.

**664**

Sean D. O'Brien, Jeremy Weis, Bronwyn Warner, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Assistant Attorney General, Jefferson City, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Movant, Dale Helmig, appeals from the judgment of the circuit court denying his Rule 29.15 motion for post-conviction relief after an evidentiary hearing. We affirm.

A jury found movant guilty of one count of murder in the first degree, in violation of Section 565.020.1 RSMo (Cum.Supp. 1992), for the murder of his mother, Norma Helmig (victim). Victim's death had occurred in the early morning hours of July 29, 1993 and her nightgown-clad body was found in the Osage River on August 1, 1993, bound with a nylon cord which was attached to a concrete block. The prosecution's case was based on circumstantial evidence that movant had the means and opportunity to commit the crime and engaged in conduct and made statements after the crime which showed a consciousness of guilt, a desire to conceal his role in the offense, and unique knowledge of the details of the crime.

The trial court sentenced movant to life imprisonment without possibility of parole. Movant filed a direct appeal claiming insufficiency of the evidence. We affirmed movant's conviction without published opinion. *State v. Helmig*, 950 S.W.2d 649 (Mo.App.1997). Movant then filed a pro se Rule 29.15 motion and appointed counsel filed an amended motion. Following an evidentiary hearing, at which movant did not testify, the motion court issued its findings of fact and conclusions of law denying relief.

Our review of the denial of a post-conviction motion is limited to a de-

termination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc 1996), *cert. denied,* 519 U.S. 1152, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with a definite and firm impression that a mistake has been made. *Id.*

On appeal, movant challenges the denial of his post-conviction motion and claims that 1) trial counsel was ineffective in five different respects in failing to conduct a reasonable investigation and present evidence or object at trial; 2) trial counsel had an undisclosed conflict of interest which adversely affected his ability to represent defendant; 3) the prosecution suppressed material evidence; 4) trial counsel was ineffective in failing to object to prejudicial hearsay evidence and appellate counsel was ineffective for failing to brief on appeal the introduction over objection of other hearsay evidence which, taken together, constitute the only evidence of movant's motive; 5) trial counsel was ineffective for failing to request a continuance, change of venue, mistrial or other appropriate relief and for failing to present to the court the fact that jurors were exposed to media interviews of witnesses outside the courtroom; and 6) movant was deprived of his right to assist in his own defense, confront witnesses, and make informed, knowing and voluntary waivers of his rights because defense counsel instructed him to take and provided him with muscle relaxing medications prior to trial.

 Rule 84.04(e) limits the argument portion of the brief to those errors includ-ed in the "Points Relied On." We determine only those questions stated in the points relied on. *Boatmen's Bank v. Foster,* 878 S.W.2d 506, 509 n. 4 (Mo.App. 1994). Accordingly, in addressing movant's points on appeal, we consider all arguments encompassed by each point relied on, but we do not consider arguments and issues raised in the argument portion of the brief which are not encompassed by the points relied on. *Chancellor Development Co. v. Brand,* 896 S.W.2d 672, 678 (Mo.App.1995).

## I. Ineffective Assistance of Counsel: Failure to Conduct a Reasonable Investigation and Present Evidence and Failure to Object

For his first point, movant asserts "that the motion court clearly erred in denying [movant's] motion under Rule 29.15 because trial counsel was ineffective ... in that" A) he failed to conduct a reasonable investigation and present evidence undermining the state's case and supporting movant's alibi defense, B) he failed to conduct a reasonable investigation and present evidence implicating others in victim's death, C) he failed to conduct a reasonable investigation and present evidence to rebut the state's claim that movant and victim had a quarrelsome relationship, and D) he failed to conduct a reasonable investigation and present evidence to rebut the state's claim that movant "knew too much too soon" and made "suspicious statements" and was therefore guilty of killing [victim], and E) that trial counsel failed to object to the state's evidence that movant was considered "armed and dangerous" and "could be violent" when arrested.[1]

---

1. This point is defective in that each of the subpoints is properly the subject of a separate point. The contention that "the motion court clearly erred in denying [movant's] motion under Rule 29.15" for multiple unrelated reasons is not a proper point relied on under Rule 84.04(d):

In order to prove ineffective assistance of counsel, movant must show that: 1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney; and 2) movant's defense was prejudiced by his counsel's poor performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998), *cert. denied*, 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999). Movant must show both elements in order for the court to find the conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Actions that constitute sound trial strategy are not grounds for ineffective assistance claims. *Hall*, 982 S.W.2d at 680. In order to satisfy the first prong, movant must overcome the presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment. *Id.* The prejudice prong of the *Strickland* test is not presumed from a showing of deficient performance, but also must be affirmatively proved. *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. Prejudice is not established by showing that trial counsel's errors had some conceivable effect on the outcome of the proceedings; rather movant must show a reasonable probability that the result would have been different but for the errors of counsel. *Id.* at 694, 104 S.Ct. at 2068.

"Ordinarily, the choice of witnesses is a matter of trial strategy and will support no claim of ineffective assistance of counsel." *State v. Harris*, 870 S.W.2d 798, 816 (Mo. banc), *cert. denied*, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). "This is because 'strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* at 816–17 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Trial counsel may be ineffective for failure to locate and call witnesses, if the movant can establish 1) trial counsel knew or should have known of the existence of those witnesses, 2) that the witnesses could have been located through reasonable investigation, 3) that the witnesses would have testified if called, and 4) that their testimony would have provided a viable defense. *Harris*, 870 S.W.2d at 817.

The error contemplated by Rule 84.04(d) in a court-tried case is not the judgment itself but the trial court's actions or rulings on which the adverse judgment is based, such as explicitly or implicitly making or failing to make a certain factual finding, applying or failing to apply a particular rule of law, taking or failing to take a certain procedural action, etc. *See Thummel v. King*, 570 S.W.2d 679, 685–88 (Mo. banc 1978). When an appellant makes the entire judgment one error and lists multiple grounds therefor, the result is that the point contains multiple legal issues. Separate issues should be stated in separate points relied on. *Id.; In Interest of A.H.*, 963 S.W.2d 374, 379 (Mo.App.1998); *Campbell v. Rickert*, 938 S.W.2d 282, 285 (Mo.App.1997); *Chancellor Development Co. v. Brand*, 896 S.W.2d 672, 674 (Mo.App.1995); *Wulfing v. Kansas City Southern Indus., Inc.*, 842 S.W.2d 133, 145 (Mo.App.1992).
*Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 283, n. 2 (Mo.App.1999).
Although we do not condone the form of this point relied on, we will gratuitously addressed the arguments raised in subpoints A-E in order to render a decision on the merits as we did in *Wheeler*. However, we do not separately address subpoint F which states: "F. Had counsel performed competently, there is a reasonable probability that the jury's verdict would be different because of the strong showing that appellant is innocent." This is merely a conclusion which does not address wherein or why the trial court erred in any respect.

Before we address the specific claims of ineffective assistance, we will set out counsel's strategies in order to give context to the issues raised. Defense counsel used multiple strategies in defending this case. Prior to trial, counsel obtained a change of venue because of pretrial publicity. Counsel saw this prosecution as a "bad person" case because movant had had numerous drug and alcohol arrests over the years and had been involved with crack cocaine with a girlfriend who testified at trial and counsel did not want the jury to be influenced by movant's background. Counsel effectively kept out any reference to any of movant's "bad acts" during trial by pursuing a motion in limine followed up by repeated objections during trial. Counsel was thus able to keep out all reference to movant's past drug and alcohol arrests and misdemeanor convictions and failure to pay child support even when movant's statements about these topics were intertwined with evidence relating to movant's motive.

▆▆▆▆ Counsel also attempted to keep out of evidence all of movant's statements on the grounds that the state had not shown *corpus delicti*, based on the fact that the medical examiner could not testify to the cause of death. As part of his effort to show that the state could not prove *corpus delicti*, counsel adduced evidence of victim's dependence on prescription medications in an attempt to suggest the possibility she could have died of a drug overdose and someone who did not want to be associated with her death could have disposed of the body in the river.[2] Although all of his objections were overruled, counsel preserved his claim that the state had not shown *corpus delicti* by repeated objections throughout trial.[3]

Counsel additionally attempted to show that, if victim died as a result of homicide, no evidence tied movant to the crime and someone else could have been responsible. Although he presented evidence that Ted Helmig could have been responsible, counsel testified that he did not believe that anyone had a motive to kill victim. As an attorney who practices family law, as well as criminal law, he did not view the divorce between the victim and Ted Helmig as a contentious dissolution. He testified that there was no evidence that anyone else had a causal connection to the crime and that he was aware that Missouri law prohibited evidence pointing the finger at someone else in the absence of a causal connection. However, in spite of this prohibition, counsel was successful in adducing much of this evidence.

**2.** To show *corpus delicti* the state must prove that the death was not self-inflicted or the result of natural causes or accident. *State v. Evans,* 992 S.W.2d 275, 284 (Mo.App.1999). Extra-judicial statements of the accused are not admissible absent independent proof of all of the elements of the *corpus delicti. Id.*

**3.** In the argument section under this point, movant asserts that the defense of "accidental death" pursued by trial counsel was "bizarre" and ineffective. Because movant did not raise this issue in his Point Relied On, he has not preserved the issue for appellate review. *Boatmen's Bank,* 878 S.W.2d at 509 n. 4. Our review of issues is limited to errors contained in the Points Relied On. Rule 84.04(e). *Chan-*

*cellor Development Co.,* 896 S.W.2d at 678. Furthermore, a party cannot alter or add to its Points Relied On in its reply brief, as movant attempted to do here. *Elfrink v. Burlington Northern R. Co.,* 845 S.W.2d 607, 615 (Mo.App.1992). Even if this had been preserved, it does not present a viable claim. Trial counsel made a legal argument suggesting that the state had not shown *corpus delicti* based on the fact that the medical examiner could not testify to the cause of death. If this argument had been successful, movant's damaging statements would not have been admitted. Therefore, counsel's attempt, although unsuccessful, to keep out evidence was reasonable in light of the trial strategy available to counsel.

During trial, counsel made repeated objections to the state's evidence and to the nature and form of the questions and forced the state to meet its burden of proof with original documents, rather than copies, and properly worded questions. He made so many objections that several times during trial he expressed his concern to the court about the effect of his repeated objections. He eventually told the court he would not make further objections unless the questions were "totally terrible."

Counsel testified that he did not attempt to rebut every piece of evidence the state adduced at trial because it would give "credibility to evidence presented which was not credible." He did not want to rebut evidence that he did not believe supported a valid theory of movant's guilt. He did not believe that much of the material the state adduced was in fact evidence of movant's guilt which required rebuttal.

We turn now to the subpoints raised under Point I.

### A. *Alibi Witnesses*

Movant first contends that the motion court clearly erred in denying movant's Rule 29.15 motion because:

A. Trial counsel failed to conduct a reasonable investigation and present evidence undermining the State's case and supporting Dale's credible alibi defense. Dale had contact with Tiffany Jones and Mary Buhs Neal, who could have supported the defense that Dale intended to spend the night in a motel in Fulton on the night of his mother's probable disappearance from her home near Linn. Tom Stout saw that Dale looked fresh and well-rested the next morning. Everett Helmig could have testified that he observed traffic along the road between his and Ms. Helmig's home several times that night, but did not see Dale's car.

At trial there was evidence that victim was abducted from her home in Linn, Missouri and died sometime between 1:00 a.m. and 6:00 a.m. on July 29, 1993. There was evidence that movant and a car matching his car's description were at a motel in Fulton, Missouri at 10:45 p.m. the night of July 28, that no car matching his car's description was at the motel at 5:00 a.m. on July 29, and that movant was seen in Jefferson City, Missouri at approximately 4:00 p.m. on July 29. No witness testified to his whereabouts between 10:45 p.m. on July 28 and 4:00 p.m. on July 29.

Trial counsel testified at the 29.15 hearing that he did not present evidence that movant had encountered people at Wal-Mart on the evening of July 28 because this occurred before movant was seen at the Fulton motel by the pizza deliveryman, which time and location was well-established. He interviewed the WalMart clerk, Tiffany Jones, but found she did not remember much, could not identify movant as the person she encountered, and did not really remember the conversation with movant. He did not believe that she could testify that movant was making overt preparations to spend the night in Fulton. He testified that there was no alibi defense.

The motion court found that movant did not have a credible alibi defense and that none of these witnesses would have provided movant with an alibi. Specifically, the motion court found that Mary Buhs Neal could not provide an alibi for movant, that her testimony consisted of movant's inadmissible self-serving hearsay statements, and that movant had not shown that she was made known to trial counsel or could have been located for trial. The court found that Tiffany Jones was unable to provide an alibi for movant. The court also found that Tom Stout could not provide an alibi for movant. Finally, the

court found that Everett Helmig was not a credible witness because other family members had described him as easily manipulated.

█ Preliminarily, we consider whether movant showed what these witnesses' testimony would be, if called. Tiffany Jones, Mary Buhs Neal, Tom Stout, and Everett Helmig did not testify at movant's 29.15 hearing. Their statements were submitted in affidavits which have not been filed with this court. Rule 81.12 imposes the duty on movant, as appellant, to file the transcript and to prepare a legal file so that the record contains all the evidence necessary for us to make determinations on the issues raised. *State v. Scott,* 933 S.W.2d 884, 886 (Mo.App.1996). Because these affidavits were not made part of the record on appeal, there is nothing for us to review with respect to these witnesses. We do not have a record of what these witnesses said in their affidavits except what is contained in the motion court's findings or in the briefs.

█ However, even if we consider the contents of these affidavits to be as represented in the findings and in the briefs, the testimony of these witnesses would not have constituted a defense. None of these witnesses saw movant during the period of time the crime could have been committed. It is not ineffective assistance of counsel to decide not to call witnesses whose testimony does not support an alibi defense but only accounts for movant's whereabouts before or after the time of the crime. *State v. Brown,* 966 S.W.2d 332, 337 (Mo.App.1998); *State v. Boyd,* 842 S.W.2d 899, 905–06 (Mo.App. 1992); *State v. Flieger,* 776 S.W.2d 25, 30–31 (Mo.App.1989). None of these witnesses would have provided movant with an alibi because they "would not have so far removed him from the scene of the crime at the relevant time to render it impossible that he is the guilty party." *Williams v. State,* 8 S.W.3d 217, 220 (Mo. App.1999).

Mary Buhs Neal and Tiffany Jones were supposed to have seen and spoken to movant before he was seen at the Fulton motel. There was no dispute at trial that the movant was at the motel at 10:45 p.m. In addition, these witnesses would not have been able to testify at trial to their conversations with movant. Counsel testified that Tiffany Jones could not identify movant or remember a conversation with him. Movant's remark to Mary Buhs Neal that he intended to spend the night at the motel would not have been admissible to show that he in fact did spend the entire night there and did not leave.

█ In his brief movant does not cite to an affidavit or to any part of the record which contains the testimony attributed to Tom Stout. Further, Tom Stout's purported testimony, that he saw movant at LaCasa Restaurant in Jefferson City at 10:30 a.m. of July 29, contradicts movant's written statement, which was before the jury, in which movant stated he did not leave Fulton before 2:30 p.m. on July 29, that he drove to Holt's Summit and then to LaCasa in Jefferson City and that he talked to the manager "Jim" at LaCasa. Jim Stout testified at trial that he saw movant at LaCasa at 4:00 p .m. on July 29, which was consistent with movant's written statement. Counsel was not ineffective for not calling a witness who would contradict defendant's own corroborated statement. *See Harris,* 870 S.W.2d at 817.

█ The trial court, based on witness testimony, found Everett Helmig not to be credible. We are bound by the trial court's findings on witness credibility. *Estes v. State,* 950 S.W.2d 539, 542 (Mo. App.1997); *Sharp v. State,* 908 S.W.2d 752, 757 (Mo.App.1995) *cert. denied* 518 U.S.

1007, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996).

None of the identified witnesses would have provided movant with an alibi defense for the relevant time period. Counsel was not ineffective in not adducing evidence from these witnesses. Point I.A. is denied.

B. *Evidence Implicating Others*

Movant contends in Point I.B. that the motion court clearly erred in denying movant's Rule 29.15 motion because:

B. Trial counsel failed to conduct a reasonable investigation and present evidence implicating others in Dale's mother's death. Ted Helmig was in the middle of a hostile divorce from Norma Helmig, she had previously obtained a restraining order against him for abuse, Ted had thrown coffee in her face and threatened to "put an end to this" less than three weeks before her death, Ted was the one person who stood to gain financially from his wife's death, his whereabouts were unaccounted for after midnight on the night Ms. Helmig was probably killed, Ted saw his wife drinking in a bar with another man shortly before she was last seen alive, he was facing a contempt citation in his divorce over his conversion of marital property, and he acted strangely at his wife's funeral, and invoked his Fifth Amendment rights when asked to give a statement to the sheriff.

The motion court found that movant had failed to produce any evidence, other than mere suspicions and conjecture, indicating that anyone other than movant had committed the crime.

Evidence which has no other effect than to cast bare suspicion on another is not admissible. *State v. Butler*, 951 S.W.2d 600, 606 (Mo. banc 1997). A defendant may not introduce evidence that another person had the motive or opportunity to commit the crime with which the defendant is charged unless the defendant introduces evidence that the other person committed some act directly connecting him with the crime. *State v. Wise*, 879 S.W.2d 494, 510 (Mo. banc 1994), *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995).

All of the evidence movant sets out in this point relates to Ted Helmig's motive and opportunity to kill victim, and none of it constitutes an act by Ted Helmig that directly connects him to the crime. The fact that Ted Helmig threatened victim and saw victim with another man the night of her death, and the fact that Ted Helmig stood to profit by victim's death goes only to motive, it does not directly connect Ted Helmig to the crime itself. Evidence that another person had a motive and opportunity to commit the crime does not exculpate a defendant, who also had a motive and opportunity. *Wise*, 879 S.W.2d at 511.

At the hearing counsel testified he was aware of these legal principles and he did not see a causal connection between the crime and any other witnesses that was worthwhile for him to pursue. He testified that the divorce was not bitter and he did not think that either Ted Helmig or movant had a motive. He further testified that even though he knew that Missouri law prohibited him from introducing evidence that another person had motive and opportunity he did take the opportunity to point the finger at other people. Further, the evidence at the hearing did not establish that Ted Helmig took the Fifth Amendment, but that he gave two statements to the sheriff.

In addition, much of the unfavorable evidence about Ted Helmig was before the jury. Counsel elicited the fact that the victim had a restraining order against Ted

Helmig, that the restraining order kept him from selling marital property, that Ted Helmig had sold marital property, that physical threats were "a given" on an *ex parte* order, that there were problems with Ted Helmig and the restraining order, that Ted Helmig had thrown coffee at victim in a restaurant on July 11, 1993, while saying, "I'm going to have an end to this once and for all", that Ted Helmig had seen the victim at the American Legion hall on July 28, that the sheriff had considered Ted Helmig a suspect, that the sheriff had talked to Ted Helmig on the Friday night before the body was discovered and again on the Sunday night after the body was discovered, and that Ted Helmig had claimed to be at home the night victim disappeared, but the police had been unable to verify this. Moreover, in his closing argument, counsel questioned why movant was the suspect and not Ted Helmig who also could not support his whereabouts that night with witnesses. He also suggested that movant's uncle might have had a motive.

The trial court did not clearly err in denying movant's Rule 29.15 motion because counsel was not ineffective in deciding not to further pursue evidence that would be inadmissible. *State v. Ferguson,* 20 S.W.3d 485, 507 (Mo. banc), *cert. denied,* —— U.S. ——, 121 S.Ct. 582, 148 L.Ed.2d 499 (2000); *State v. Chambers,* 891 S.W.2d 93, 110 (Mo. banc 1994). Point I.B. is denied.

C. *Evidence Rebutting Quarrelsome Relationship*

In point I.C. movant asserts that the motion court clearly erred in denying his Rule 29.15 motion because:

Trial counsel failed to conduct a reasonable investigation and present evidence to rebut the State's claim that Dale and his mother had a quarrelsome relationship, and that he killed her over a $200

phone bill. Dale's brother, Rich Helmig, his father, Ted, Randy Goben, David Boes, Everett Helmig, Jim and Tom Stout, Steve and Linda Asher, and Lisa-Baysinger could all have testified that Dale and his mother's relation was very good and loving. Several knew that Dale was his mother's favorite, and vice versa. They could have further testified that Dale also gave his mother money, that he took care of her needs and worried about her, and was very upset by her death. Carolyn Morgan could have testified that Dale and his mother worked hard together to arrange visitation with Dale's children.

At the 29.15 hearing, trial counsel testified that, while he would not have lost any ground proving that movant and victim had a close loving relationship, he "would say that you're validating the State's argument such as it was, if you do that."

The motion court found that trial counsel was not ineffective for failing to call each of the witnesses movant alleged would testify to his good relationship with victim: Steve Asher, Linda Asher, David Boes, Randy Goben, Carolyn Morgan, Jim Stout, Tom Stout, Everett Helmig, Richard Helmig, Tim Branson, Ted Helmig, and Lisa Baysinger.

The motion court found that movant had not proved that counsel's decision not to attack each and every piece of evidence put forth by the state was not reasonable trial strategy. The court found that it was a reasonable strategy not to attack every element of the state's case and to instead attempt to give focus to movant's theory of defense. The court further found that movant had not put forth evidence that the outcome of the case would have been any different had counsel undertaken the actions movant asserts counsel should have undertaken. The court found, upon re-

viewing the record, that the outcome would not have been different.

We first consider whether movant showed that these witnesses could have been located through a reasonable investigation. The court determined that movant did not show that Steve Asher, Linda Asher, and Carolyn Morgan were made known to trial counsel or could have been located for trial. Nothing in the record on appeal contradicts this finding.

We next consider whether movant showed what the remaining witnesses' testimony would have been if called. The testimony of Randy Goben, David Boes, Jim Stout, Tom Stout, and Everett Helmig was contained in affidavits not filed with this court. As set out under Point I.A., *supra*, movant has not preserved any error with respect to the contents of their affidavits. The motion court found two of the witnesses who did testify, Richard Helmig and Lisa Baysinger, and one witness who submitted an affidavit, Everett Helmig, to be incredible. As previously stated we are bound by the motion court's determinations of witness credibility. *Estes*, 950 S.W.2d at 542; *Sharp*, 908 S.W.2d at 757. Tim Branson was the only witness identified under this point who was called at the hearing and not found incredible.

In any event, even if the witnesses who submitted affidavits would have testified as represented in the trial court's findings and movant's brief, counsel's decision not to call these witnesses or Tim Branson was reasonable trial strategy. Contrary to movant's argument, the state did not adduce evidence that movant and victim had an ongoing quarrelsome relationship. Rather, the state adduced evidence that movant was close to victim and relied on victim for money. Even though he was in his thirties and married, victim paid his bills and gave him gas money for years. Relatives saw victim give him money from her purse on different occasions. Movant separated from his wife in September, 1992. Victim separated from her husband in the spring of 1993. After living with her sister for two months, victim lived at her house in Linn, Missouri and movant moved in with her. In July, 1993 victim was still giving movant money. There was no evidence of an argument between them specifically over her giving him money until July 24, 1993. There was no evidence of ill-feeling between them until after movant moved in with victim. His aunt then observed that movant and his mother argued over his children and money, that he was agitated and "hyper" around his mother, and that he was angry about not seeing his children regularly and victim could not calm him down.

Counsel was not ineffective for choosing the reasonable strategy of not putting on additional evidence of movant's close relationship with victim because such evidence could have fortified the state's theory that the murder was generated when movant's close economically dependent relationship with victim was being threatened. It is a matter of sound trial strategy not to call witnesses who would corroborate the state's case. *State v. Ramsey*, 864 S.W.2d 320, 339 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). Further, evidence of a good relationship would have been cumulative of the evidence throughout the trial that movant and his mother got along. Counsel is not ineffective for deciding not to present cumulative evidence. *Id.* at 340; *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997), *cert. denied*, 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998); *Hall*, 982 S.W.2d at 686.

Further, such evidence may have been damaging for other reasons. For example,

Branson's testimony that movant was concerned about his mother during the flood several weeks before and his efforts to find her would not have contradicted the evidence that there was a good relationship at that time, but would have contrasted unfavorably with movant's behavior when he discovered his mother was missing after her murder, which, as described in Point I.D. below, was to take a shower, watch television, and drink beer.

■ There is no reasonable possibility that the outcome of the case would have been different had trial counsel introduced evidence of movant's good relationship with his mother because this was never effectively contested at trial. Further, it would not have constituted a viable defense. Movant failed to satisfy either prong of *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Point I.C. is denied.

D. *Evidence Rebutting Movant's Knowing "Too Much Too Soon"*

For Point I.D. movant claims that:

Trial counsel failed to conduct a reasonable investigation and present evidence to rebut the state's claim that Dale "knew too much too soon" and made "suspicious" statements and was therefore guilty of killing his mother. Ted could have testified that his wife carried her keys in her purse, not hanging at her side as the state's witness claimed. Rich Helmig and Velda Party could have testified that it was Dorothy Bauer who first mentioned that Ms. Helmig must be in her nightgown, and they and Lisa Baysinger could say that the sheriff described the nightgown on the body before anyone in the family did. Rich knew that Dale was not at the house on Saturday with the rest of the family because Rich and Deputy Backhues both suggested that Dale not take his children there.

■ Part of the state's case at trial was evidence of movant's inculpatory behavior, consciousness of guilt, and unique knowledge of the details of the crime. To give context to the issues raised in this point, we describe that evidence here. On Wednesday evening, July 28, movant, sounding excited or irrational, telephoned his uncle, said he was looking for his mother, and said he was going to go home. Movant's whereabouts from 10:45 p.m. on July 28 until 4:00 p.m. on July 29 could not be independently established. On Friday, July 30, movant arrived at victim's home at noon with a girlfriend. His aunt, who spoke with victim daily and socialized with her regularly, had told him earlier that she had not seen or talked to victim since July 28. Upon arrival, movant observed that his mother's car was there and she was not. About the time he arrived, he telephoned his aunt in Jefferson City and told her that a fan and some of his mother's new nightgowns were missing. His aunt said she and her husband would drive down from Jefferson City. He said he would not be there when they arrived. He took a shower and he and his girlfriend were watching television and drinking beer when his aunt and uncle arrived. As various relatives arrived during the afternoon, movant pointed out details around the house and associated them with foul play even though they did not indicate foul play to others. That afternoon movant told his girlfriend that victim's purse was missing and her keys must be "in her purse." He again told his aunt that afternoon that two of victim's new nightgowns were missing and added that a gold chain was missing.

Also on Friday afternoon, movant's aunt asked him to call the police three times over a fifteen to twenty minute period before he made the call. After speaking to the deputy sheriff that afternoon and observing the sheriff's arrival, movant told his aunt that he was "going to change his

story." While taking his girlfriend back to Jefferson City that evening, he said to her, "Someone must have gotten crazy drunk and went in and killed her." During a conversation with his estranged wife later that evening, movant angrily asked her "Are you trying to say I killed my own mother?"

The next day, Saturday, while the police were conducting an aerial search for the victim around the Gasconade River, movant commented that he did not think they would find anything down there. On Sunday, when movant was informed that the body of a woman had been found in the Osage River, he appeared shocked and surprised, but, unlike the other relatives in the room, did not start crying. When the sheriff asked if anyone could identify a gown, movant volunteered a description of the nightgown victim was in fact wearing. Later that afternoon, movant volunteered that the motive was robbery and he had no motive for the crime and stated that "whoever had done this had to have been strong."

After his arrest movant told an officer that he knew who did it, but no one could prove it. Finally, during the police interrogation after his arrest, movant's face flushed, his voice broke, he started crying, and he said "I'm sorry, I'm just sorry," when he was told that victim was watching and that he could speak to her.

In claiming that he received ineffective assistance of counsel, movant argues that his attorney should have presented evidence to rebut the evidence presented by the state. Specifically, he argues that his trial counsel should have called (1) Ted Helmig to testify that victim carried her keys in her purse; (2) Richard Helmig and Velda Party to testify that the movant's aunt was the first person to point out that the victim must be in her nightgown; (3) Richard Helmig, Velda Party and Lisa Baysinger to testify that the sheriff described the victim's nightgown before movant did; and (4) Richard Helmig to testify that movant was not at the house on Saturday because Richard Helmig and Deputy Backheus had told movant not to take the children there. He claims that this evidence would have eliminated or minimized much of the state's evidence and explained his guilty knowledge.

In denying movant's claim that his attorney was ineffective in failing to present this evidence, the motion court found that:

> In **CLAIM V**, Movant asserts that trial counsel was ineffective for failing to investigate and present evidence to rebut the State's theory that the Movant "knew too much too soon."
>
> After reviewing the record, this Court finds that the Movant has failed to establish, as asserted in his Motion, that others had the same knowledge at the same time (or before) that of the Movant [sic]. Movant has failed to show that a reasonable trial strategy was not behind trial counsel's decision not to attack each and every piece of evidence put forth by the State. This Court finds, as trial counsel testified, that it was a reasonable trial strategy not to attack every element of the State's case and instead attempt to give focus to the Movant's theory of defense.
>
> Moreover, Movant has failed to present any evidence that the outcome of his case would have been any different had his counsel taken the actions he asserts should have been undertaken. After reviewing the record, this Court finds that the outcome would not have been different.

We agree that movant did not show that counsel's failure to call the identified witnesses to testify about the following matters was not reasonable trial strategy.

1. Keys in the Purse. Part of the state's evidence that movant had guilty knowledge was that he told his girlfriend that victim's keys must be in her purse and that when the purse was found, the keys were in the purse. The state argued in closing that this was incriminating because victim's sister had testified that victim never carried her keys in her purse but always carried them in her belt loop. Movant argues that counsel was ineffective for failing to call Ted Helmig to testify that victim "probably" carried her keys in her purse because such evidence would have supported an argument that anyone who noticed victim's keys were missing would have concluded that they were in her purse.

██ Under *Strickland*, movant must prove that trial counsel's failure to call a witness was not sound trial strategy. *Hall*, 982 S.W.2d at 680. In many instances seasoned trial counsel do not call particular witnesses for strategic reasons. The witness may hurt rather than help the defense by opening up other avenues of testimony, by refuting defense evidence, by testifying unfavorably on cross examination, by being easily impeached, by not making a good witness, etc. *See, e.g.*, *Chambers*, 891 S.W.2d at 111; *Ramsey*, 864 S.W.2d at 340.

██ At the hearing movant never asked counsel to explain why he had not called Ted Helmig as a witness and in particular did not ask counsel why he did not call Ted Helmig to testify about where victim carried her keys. In this case there could be many reasons why defense counsel did not want to call Ted Helmig, including the fact that defense counsel was trying to shift the blame for the murder on him. It would be inconsistent to try to present Ted Helmig as both a credible witness and the perpetrator of the crime. Further, the proposed testimony was not definitive and, in particular, did not address the circumstances of an abduction. Counsel may not have wanted to highlight the earlier testimony with less than a complete rebuttal. Counsel testified generally at the hearing that he did not attempt to rebut every piece of evidence offered by the state so as not to give credibility to it. By failing to ask counsel for an explanation why he did not elicit this testimony, movant failed to provide the motion court with any basis for concluding that counsel did not have a strategic purpose in deciding not to call Ted Helmig as a witness. *See* *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc) *cert. denied*, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *State v. Booker*, 945 S.W.2d 457, 459 (Mo.App. 1997).

2. Nightgown. Movant argues that counsel should have adduced evidence that other people concluded the victim was in a nightgown before movant did. He specifically points out that, in her 29.15 testimony, movant's aunt testified that, when she looked at victim's bedroom on Friday, she remarked to a cousin that victim must be in a nightgown because her clothes from Wednesday evening were out. He also points out that Richard Helmig testified at the 29.15 hearing that on Friday evening he heard movant's aunt say that victim was in her nightgown. Counsel further maintains that Richard Helmig testified that he searched through victim's drawers on Saturday and concluded that her blue and white nightgown was missing.

██ As previously stated, we are bound by the trial court's finding that Richard Helmig was incredible. *Estes*, 950 S.W.2d at 542; *Sharp*, 908 S.W.2d at 757. Accordingly, movant did not rebut the presumption that the decision not to call Richard Helmig was sound trial strategy.

Movant's aunt's hearing testimony about her statements on Friday evening does not contradict her trial testimony that, on Friday morning, before she ever went to victim's house, movant had telephoned her and told her that victim's nightgowns were missing. Thus, movant was the first to mention a missing nightgown. Further, numerous witnesses testified at trial that, as they arrived at the house on Friday afternoon, movant advised them that two or more of victim's nightgowns were missing. Counsel was not ineffective for failing to call witnesses to testify to statements the aunt made about a missing nightgown after arriving at the house because none of this proffered testimony contradicted the evidence that movant told the aunt about the missing nightgowns in a telephone conversation before she arrived. *See Harris*, 870 S.W.2d at 817–18.

3. Description of Nightgown. Movant next asserts that Lisa Baysinger, who had lived with movant's brother Richard Helmig for 11 years, testified at the hearing that, when the sheriff advised the family that a body had been found, he "described what she had on and wanted to know if she had a nightgown of that nature." He argues that this testimony would have rebutted the sheriff's testimony.

The motion court found Lisa Baysinger was biased. The motion court's finding of bias constituted a determination that Lisa Baysinger's credibility had been impeached. As previously stated, we defer to the motion court's findings on matters of witness credibility. *Estes*, 950 S.W.2d at 542; *Sharp*, 908 S.W.2d at 757. Accordingly, movant did not rebut the presumption that counsel did not call Lisa Baysinger for strategic reasons.

4. Absence of Movant from Victim's house on Saturday. Movant argues that, because the state argued that movant's absence from victim's house on Saturday showed he was not worried like the others, counsel was ineffective for failing to adduce evidence that Richard Helmig told movant it was important to visit his children on Saturday and that Deputy Backhues told him it would be better not to bring the children to the house on Saturday.

As previously stated, the motion court found Richard Helmig to be incredible, and movant therefore did not rebut the presumption that counsel's decision not to call Richard Helmig was sound trial strategy. In any event counsel's failure to elicit that others opined that movant should visit his children on Saturday and gave common sense advice not to bring the children to victim's house can hardly be deemed ineffective assistance where the fact that movant had visitation with his children on Saturday was in evidence, as well as movant's ex-wife's testimony that movant in fact picked his children up at 9:00 a.m. Saturday for visitation.

The trial court did not clearly err in determining that counsel was not ineffective for failing to call the witnesses identified in this point. Point I.D. is denied.

E. *Failure to Object to "Armed and Dangerous"*

In point I.E. movant claims that the motion court erred in denying movant's Rule 29.15 motion because movant's trial counsel was ineffective in that:

Trial counsel failed to object to the State's evidence to the effect that Dale was considered "armed and dangerous" when the police sought to arrest him, carried a .44 caliber carbine and filet knife when he was arrested, "could be violent" and was on his way to seek a confrontation with the sheriff.

At trial, Sergeant Cynova testified that, when he was instructed to apprehend movant, he was informed by the dispatcher that movant "was supposed to be heavily armed and going to Osage County with whatever on his mind." Trial counsel objected on hearsay grounds, but the court overruled the objection and advised that the dispatcher's information would be admitted to explain subsequent police conduct. Accordingly, because counsel did object, there is no viable ineffective assistance of counsel claim with respect to this testimony. Sergeant Cynova then testified that the dispatcher specifically advised that movant "had a rifle, a large caliber carbine, .44 caliber; he had a 4–inch filet knife taped to his leg and possibly a shotgun." When Sergeant Cynova apprehended movant, movant had a knife taped to his leg and a loaded carbine rifle was on the front seat. Defense counsel did not object to this testimony.

On cross-examination defense counsel adduced from Sergeant Cynova that movant had stopped even though the patrol car's lights had not been turned on, offered no resistance, and made no statement other than, "You guys are making a big mistake." Sergeant Cynova also read from his report: "While in the custody of the Jefferson City Police Department officers and myself, [movant] was extremely polite and was not in the least bit antagonistic. He was cooperative and assisted officers in the performance of our duties."

Missouri State Highway Patrol trooper Robert Westfall was called to testify after Sergeant Cynova. He testified that "we were advised that [movant] could be violent, and I wanted any officer who came into contact with him to have that information" and "we were advised that [movant] was armed and was coming to seek a confrontation with the sheriff." Counsel did not object to this testimony.

In denying movant's claim that he received ineffective assistance of counsel based on his counsel's failure to object, the motion court found:

Trial counsel testified that he made a conscious decision not to object to matters which he felt would serve no value except to alienate the jury. Trial counsel need not make meritless objections. *Sidebottoms* [sic] *v. State,* 781 S.W.2d 791, 799 (Mo. banc 1989), *cert. denied,* 497 U.S. 1046, (1990). Very few of the specific challenges made by Movant have any merit, and in the case of those where an objection could have been made, the decision not to object had strategic support.

Movant failed to rebut the presumption that the failure to object was a strategic choice. *State v. Tokar,* 918 S.W.2d 753, 768 (Mo. banc 1996). This Court expressly finds, based on the trial counsel's testimony and this Court's observation of counsel, that the decisions to not object were knowing and strategic by experienced, well-prepared counsel.

Decisions about whether or when to make objections at trial are left to the judgment of counsel. *State v. Suarez,* 867 S.W.2d 583, 587 (Mo.App.1993). "Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances." *Id.* Failing to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused's right to a fair trial. *Id.* "Counsel's failure to object to particular evidence can constitute mere 'trial error' not rising to constitutional proportions and thus not cognizable in a post-conviction motion." *Id.* Movant cannot convert unpreserved error into viable error merely

by arguing incompetence. *Id.* Rather, movant must show that counsel's overall performance fell short of established norms and that this incompetence probably affected the result. *Id.* at 587–88. Otherwise, counsel's failure to object constitutes only a procedural default, precluding appellate or collateral relief. *Id.* at 588.

 In arguing ineffectiveness a movant must overcome a strong presumption that counsel's failure to object was sound trial strategy. *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998), *cert. denied,* 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999). In many instances, seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good. *Tokar,* 918 S.W.2d at 768.

At the 29.15 hearing, trial counsel confirmed that he had not made an objection to the evidence that movant had a weapon with him when he was arrested. However, movant did not ask counsel why he had not objected to this particular evidence. As stated, to prevail movant must show that counsel's failure to object was not strategic. *Clay,* 975 S.W.2d at 135; *Tokar,* 918 S.W.2d at 768. Competent trial counsel could have decided not to object for strategic reasons. With respect to the information conveyed by the dispatches, counsel had previously objected to similar evidence and had been overruled. Thus, the evidence was already before the jury. Counsel would have had no reason to believe the court would sustain the objection if he objected again and could reasonably have concluded that another objection would emphasize and highlight the unfavorable testimony. *State v. Long,* 951 S.W.2d 679, 683–84 (Mo.App.1997). With respect to

the fact that movant was carrying weapons when he was arrested, trial counsel could have reasonably decided not to object because the jury already knew movant was reported to have the weapons. Once the evidence of the circumstances of the arrest had been admitted, counsel could elicit on cross-examination the fact that movant was polite and cooperative and not violent or aggressive while being arrested, and thereby diminish the negative effect of all of the previous testimony. *See State v. Smith,* 989 S.W.2d 223, 226 (Mo.App.1999).

Movant did not ask counsel to explain why he failed to object. "Without further evidence on this issue, [the appellant] has not overcome the presumption that the failure to object was a strategic choice by competent counsel." *Tokar,* 918 S.W.2d at 768. *See also Booker,* 945 S.W.2d at 459. Movant has failed to rebut the presumption that counsel's decision not to object was reasonable trial strategy and gave the motion court no basis for concluding that the attorney did not have a strategic purpose in deciding not to object. *Tokar,* 918 S.W.2d at 768; *Booker,* 945 S.W.2d at 459.

The motion court did not clearly err in finding that trial counsel's decision not to object was not ineffective assistance of counsel. Point I.E. is denied.

## II. Ineffective Assistance of Counsel: Conflict of Interest

For his second point movant contends that the trial court erred in denying movant's Rule 29.15 motion because movant's trial counsel was ineffective in that he had a conflict of interest. Movant argues that trial counsel also represented movant's father Ted Helmig in collecting victim's estate and that this conflict of interest adversely affected counsel's ability to represent movant.

At the 29.15 hearing, counsel testified that his initial contact was with movant

and his father Ted Helmig together. They came to him because the police had sealed victim's house and they could not get into it. They wanted to get into the house and get their property. They also wanted the car. They discussed the victim's estate and Ted Helmig brought in the paperwork. Ted Helmig hired counsel to do a refusal of letters. Ted Helmig and movant were together when they agreed to do a refusal of letters. This was over a year before movant was charged with murder. However, they were all aware that movant was a suspect.

When movant was charged with murder, both he and Ted Helmig came to see counsel. Movant entered into a legal services agreement with counsel that made it clear that movant was the client, even though Ted Helmig was a cosigner and would be paying the fees. Counsel had Ted Helmig sign a document in which he acknowledged that he understood that he might be suggested as the murderer of victim during the trial and waived his attorney-client privilege as it pertained to movant's case. Counsel testified that movant was privy to everything that went on and was aware of everything.

 To prevail on a claim of ineffective assistance of counsel founded on counsel's conflict of interest, absent an objection at trial, movant must show "that an actual conflict of interest adversely affected his lawyer's performance." *State v. Chandler*, 698 S.W.2d 844, 848 (Mo. banc 1985) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980)). In order to prove a conflict of interest, "something must have been done by counsel, or something must have been forgone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to another." *Alexander v. State*, 864 S.W.2d 354, 359 (Mo.App.1993). Furthermore, the mere

existence of a possible conflict of interest does not automatically preclude effective representation. *Id.*

 The motion court found that the nature of counsel's relationship with Ted Helmig was fully disclosed to movant. Sufficient evidence as outlined above supports this finding. The motion court further found that movant had not shown the existence of a conflict of interest because the evidence implicating Ted Helmig, that movant complains counsel did not present, was not admissible because it did not directly tie movant's father to the crime but only suggested he had a motive to kill victim. Evidence which only casts suspicion on another is not admissible, it must directly connect the other to the crime so as to implicate someone other than the accused. *Butler*, 951 S.W.2d at 606.

 Furthermore, the waiver signed by Ted Helmig, movant's awareness of the relationship between counsel and Ted Helmig, and the suggestions counsel made during trial about Ted Helmig's motive and opportunity suggest that counsel was not impaired in his presentation of a defense by his relationship with Ted Helmig. During his opening statement at trial, counsel mentioned the fact that movant's mother and father were in the middle of a "very bad divorce" and that she had a restraining order against him. Counsel then elicited all of the unfavorable evidence about Ted Helmig set out in section I.B., *supra.*

The motion court did not clearly err in denying movant's claim that counsel had a conflict of interest or took actions as a result of the alleged conflict that were detrimental to movant's interests and advantageous to his father's interests. Point II is denied.

### III. Prosecution's Suppression of Evidence

■ For his third point movant claims that the prosecution withheld material evidence. Movant argues that the prosecutor interviewed Tina Ridenhour, a camper who had been stranded at victim's house during a flood, yet never disclosed the interview or the information obtained in it to defense counsel. Movant argues that Ridenhour's testimony would have been exculpatory. Movant did not raise this claim before the motion court in either his *pro se* or amended motions for postconviction relief. "In actions under Rule 29.15, any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal." *Clay,* 975 S.W.2d at 141; Rule 29.15(d). Point III is denied.

### IV. Ineffective Assistance of Counsel: Failure to Object, Failure to Brief

For his fourth point movant asserts that the motion court erred in denying his Rule 29.15 motion because trial counsel was ineffective in failing to object to Lillian Wissman's testimony that victim had stated that she was "tired of being a meal ticket." Movant also contends that appellate counsel was ineffective for failing to brief on appeal the introduction over objection of Dorothy Bauer's testimony that victim argued with movant over a $200 phone bill. Movant argues that both of these statements constituted inadmissible hearsay.[4]

#### A. *Trial Counsel*

At trial, defense counsel called Lillian Wissman, who had towed victim's car after victim's disappearance, to testify to matters relating to the impoundment of the car. On cross-examination the prosecutor asked her if, after being subpoenaed, she had recalled another event involving the victim. Defense counsel objected on the grounds it was beyond the scope of direct, but was overruled. Wissman testified that her firm had towed movant's car in June, 1993. Defense counsel objected on the grounds of relevance and was overruled. The prosecutor next asked whether this had occurred just before her alleged murder; counsel again objected and was overruled. Wissman testified that victim had come to retrieve the car and paid the bill. The prosecutor then asked: "And she said that, 'He better be happy, because his meal ticket's about to run out.' " Wissman answered that the victim said, "He'd better enjoy this one, because it's the last. I'm tired of being a meal ticket." Counsel did not object to this question or answer.

■ As previously set out, we leave decisions about whether or when to make objections at trial to the judgment of counsel. *Suarez,* 867 S.W.2d at 587. To prevail movant must prove that counsel's failure to object was not sound trial strategy. *Clay,* 975 S.W.2d at 135. At the 29.15 hearing, however, movant did not ask trial counsel why he did not object to Wissman's testimony. This is an instance where seasoned trial counsel may have decided not to object for strategic reasons. Because the testimony was already before the jury in the prosecutor's question, counsel may have been afraid that an objection would indicate to the jury that the statement was damaging. Instead, as shown by his redirect, he approached the statement as inconsequential. Without further evidence on this issue, movant has failed to rebut the presumption that counsel's decision not to object was reasonable trial

---

4. This point is defective in that it combines a claim of ineffective assistance of trial counsel and a claim of ineffective assistance of appellate counsel, each relating to a different matter in one point. Separate errors should be the subject of separate points relied on. Rule 84.04(d); *Wheeler,* 999 S.W.2d at 283 n. 2.

strategy. *Tokar,* 918 S.W.2d at 768; *Booker,* 945 S.W.2d at 459.

### B. *Appellate Counsel*

At trial movant's aunt, over defense counsel's continuing objection, testified to a conversation she had with victim a few days before her death in which victim reported that movant had "run up" her telephone bill, that they had argued over it, that movant was furious, and that victim said she was afraid of him. The trial court's failure to sustain the objection was not raised in the motion for new trial and was thus not preserved. Appellate counsel did not raise this issue on appeal.

■■■ The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as that employed with trial counsel; movant is expected to show both a breach of duty and resulting prejudice. *Mallett v. State,* 769 S.W.2d 77, 83 (Mo. banc 1989), *cert. denied,* 494 U.S. 1009, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1990). Even if the error is preserved, appellate counsel is not required to raise every possible issue asserted in the motion for new trial. *Id.* Appellate counsel has no duty to present non-frivolous issues where counsel strategically decides to "winnow out" some arguments in favor of other arguments. *Id.* at 84.

■■■ Furthermore, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it." *Moss v. State,* 10 S.W.3d 508, 514 (Mo. banc 2000) (citing *Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. banc 1994)). Movant is entitled to relief from ineffective assistance of appellate counsel only if movant can show that "the error that was not raised on appeal was so substantial as to amount to a

manifest injustice or miscarriage of justice." *Id.* at 514–15.

■■■ At the 29.15 hearing, appellate counsel testified that he had originally filed a 120 page brief, but was required to cut it down to 100 pages to comply with supreme court rules. He testified that, due to the page limits, he had to pick and choose which issues to include and that he had chosen to focus on what he believed were the most important issues. In his brief, counsel raised issues that were preserved in the motion for new trial. Appellate counsel did not render ineffective assistance by using the page allowance to brief preserved issues rather than to brief an issue which was not preserved and could only be considered under a plain error standard. Like the motion court, we find that counsel's decision that other issues presented a greater chance of reversal was a reasonable strategic decision. *Mallett,* 769 S.W.2d at 84. Point IV is denied.

## V. Ineffective Assistance of Counsel: Jury Exposure to Television Interviews

For his fifth point movant contends that the motion court erred in finding no ineffective assistance of counsel when trial counsel failed to request a continuance, change of venue, mistrial, or other relief and failed to present to the court the fact that jurors were exposed to television interviews of witnesses in the case. The motion court denied this claim on the basis that the claim was not established by the trial transcript, the post-trial motion hearing transcript, or evidence presented at the 29.15 hearing.

■■■ In movant's motion for new trial, defense counsel raised the issue of improper prejudicial publicity, alleging that jurors and news media were together in the hall-

way. At the hearing on this motion, defense counsel called as witnesses the local media coordinator, a television reporter who covered the trial, a newspaper reporter who covered the trial, and the sheriff who had custody of the jurors.

The issue of television interviews in the rotunda was extensively litigated in the hearing on the motion for new trial, which the trial court thereafter denied. The issue of media presence also was raised in the direct appeal and decided adversely to movant. It cannot be relitigated in a post-conviction proceeding by transforming it into a claim for ineffective assistance of counsel. *State v. Suter*, 931 S.W.2d 856, 868 (Mo.App.1996). *See also Mallett*, 769 S.W.2d at 83. Point V is denied.

## VI. Medication Influence

For his sixth point movant claims that he was deprived of his right to assist in his own defense, confront witnesses against him, and make an informed, knowing and voluntary waiver of his due process rights when his trial attorney suggested he take and provided him with muscle relaxing medications prior to trial.

 Movant asserts that each day of the trial his attorney gave him a muscle relaxing medication which impaired his ability to participate in his defense. Patty Lammers, who was married to movant from July, 1994 until March, 1997, testified at the 29.15 hearing that she saw defense counsel give movant a long thick white pill each day of the trial and that it made him "very weak, tired, lazy-eyed, sort of zombie-like" and that he "could not think clearly" and "had a hard time holding his head up." Lammers did not bring this to the attention of the court, although she had gone to the court when concerned about a different matter.

Defense counsel testified at the hearing that he gave movant "just one pill" containing 600 milligrams of Ibuprofen in the hope that it would help movant "sit stiller." Defense counsel testified he did not notice any appreciable change in movant's demeanor after giving him the pill and did not give him more. He also testified that during trial movant did not look tired, disoriented, or like he just wanted a nap, but looked "just the opposite."

Prosecutor Robert Schollmeyer testified at the hearing that he had been present and had observed movant each day of the trial. He described movant as "[v]ery interested, obviously, in what was going on. Taking notes. Conversing with Mr. Jordan during breaks. Handing Mr. Jordan notes of what, I would assume, were things that he felt were important that was coming out in the trial.... He appeared to be very alert, very nicely dressed, very good appearance." When asked if he had observed any indications that movant was tired, Mr. Schollmeyer responded, "Not at all."

The motion court found that movant's evidence indicated only that defense counsel had provided movant with "Ibuprofen and only one muscle relaxant pill" and that there was no "credible evidence that would remotely suggest that these medications affected [movant's] abilities to assist in his own defense." Furthermore, the court observed movant during the trial, the hearing on the motion for new trial, sentencing, and during the 29.15 hearing. The court expressly found that "at no time did the Movant appear in any way to be under the influence of any substance, and that at all times, Movant appeared attentive and interested in the proceedings and able to assist in his own defense."

 The record supports the motion court's findings. Further, the motion court judge also presided over the trial and observed movant's demeanor first-

hand. We rely on that judge's superior position to have assessed movant's demeanor during trial. *See State v. Hatcher*, 835 S.W.2d 340, 346 (Mo.App.1992). Point VI is denied.

### Conclusion

The trial court did not clearly err in denying movant's Rule 29.15 motion. The judgment is affirmed.

ROBERT G. DOWD, Jr., and SHERRI B. SULLIVAN, JJ., concur.

