**Jackson W. CHAMBERS, Appellant,**

v.

**STATE of Missouri, Respondent.**
**(Two cases)**

**Nos. 21523, 21524.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 15, 1997.

James C. Cox, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for Respondent.

CROW, Judge.

On January 13, 1993, Appellant entered pleas of guilty to two counts of burglary in the second degree in case number CR492–74FX in the Circuit Court of Laclede County; he also entered a plea of guilty to escape from confinement in case number CR493–49FX in the same court. For convenience, we henceforth refer to those cases, respectively, as "the burglary case" and "the escape case."

Appellant entered the pleas pursuant to an agreement whereby the State (a) recommended a sentence of seven years' imprisonment for each burglary and a sentence of six years' imprisonment for the escape, all sentences to run consecutively, (b) dismissed six other pending counts[1] in the burglary case, and (c) agreed to forego filing an assault charge in connection with Appellant's escape and three burglary charges arising from Appellant's activities while at large.

The plea court entered judgment in each case in accordance with the plea agreement.

After delivery to the Department of Corrections, Appellant filed a motion for post-conviction relief in each case pursuant to Rule 24.035.[2] As we understand the record, the motion attacking the convictions in the burglary case was assigned number CV393–220CC; the motion attacking the conviction in the escape case was assigned number CV393–134CC. For convenience, we henceforth refer to the post-conviction cases, respectively, as "case 220" and "case 134."

---

1. Four counts of stealing, one count of attempted stealing and one count of property damage in the first degree.

2. Paragraph "(m)" of the current (1997) version of Rule 24.035 provides that where sentence is pronounced prior to January 1, 1996, post-conviction relief shall be governed by the provisions of Rule 24.035 in effect on the date the motion was filed or December 31, 1995, whichever is earlier. Appellant filed his motions for post-conviction relief on March 23, 1993, hence the version of Rule 24.035 in Missouri Rules of Criminal Procedure (1993) applies here. References to Rules in this opinion are to that version.

The motion court heard evidence in cases 220 and 134 simultaneously. Thereafter, in a judgment containing findings of fact and conclusions of law, the motion court denied relief in both cases.

Appellant brings these appeals from that judgment. The appeal from the denial of relief in case 134 was assigned number 21523 in this court; the appeal from case 220 was assigned number 21524.

The issues in both appeals are identical and are set forth in Appellant's sole point relied on, which reads:

"The motion court clearly erred in denying Appellant's Rule 24.035 motion because the record leaves a definite and firm impression that a mistake has been made, in that (1) plea counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances, by failing to request a mental examination of Appellant to determine if he was competent to plead guilty, and (2) Appellant was denied his right to due process of law, because Appellant lacked the capacity to understand the proceedings against him and lacked the capacity to assist in his own defense due to his bipolar disorder and resulting manic state at the time he pleaded guilty, which denied Appellant his rights to the effective assistance of counsel and due process as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution."

The pleas of guilty were entered the day after the escape. Appellant's account of the escape, as recited when he pled guilty, revealed he fled jail in the early morning hours of January 12, 1993, after knocking down a "trustee" who had opened the door to Appellant's cell to "get the laundry." Appellant was apprehended some eight hours later.

During the guilty plea proceeding, the plea court asked Appellant about the condition of his physical health at the time of the escape. Appellant replied, "It was good." The dialogue continued:

"Q What was the condition of your mental health at that time?

A It was good.

. . . .

Q. And your mental health today?

A Good.

Q Are you under the influence of drugs, alcohol, pharmaceuticals or prescription medication of any kind today?

A Yes, sir.

Q What substance?

A I do take lithium.

Q And how much lithium do you take and on what schedule?

A One hundred and fifty milligrams a day.

. . . .

Q Is that substance prescribed to you by a physician?

A Yes, sir.

Q What's the purpose of that prescription?

A It's to keep me from getting depressed or aggressive.

Q You suffer from a—

A Manic aggressive and manic-depressive syndrome.

Q And that has been diagnosed by a physician?

A Yes, sir.

. . . .

Q Is that . . . prescription successful in treating the condition for which it was prescribed and which you complained of at the time you presented yourself to that physician?

A Yes, sir."

Appellant then explained that the medication causes severe headaches and an upset stomach if he takes it seven consecutive days. When that occurs, said Appellant, he ceases taking the medication and resumes taking it only when he believes he needs it. However, this practice is contrary to the doctor's instructions. Appellant explained, "He told me to take it everyday and I just refuse to."

The dialogue between Appellant and the plea court continued:

"Q Are you taking that substance today?

A No, I didn't take it today.

Q How long ago did you take it?

A Probably four days ago.

Q So you're not suffering from these headaches or the stomach ache?

A No."

The plea court then informed Appellant of a multitude of rights which Appellant would be waiving if he pled guilty. Appellant stated he understood each. Appellant also said he understood the plea agreement, and he narrated a detailed account of the burglaries and the escape to which he pled guilty, followed by an equally specific account of the break-ins he committed during the hours he was at large.

The plea court found that each plea of guilty was entered voluntarily, understandingly and knowingly.

The sole witness at the evidentiary hearing in the motion court was Gerald H. Vandenberg, a "clinical and forensic psychologist," who evaluated Appellant May 10, 1996, at the Jefferson City Correctional Center. The evaluation, done at the request of Appellant's lawyer, took approximately two hours.

Vandenberg avowed "to a responsible degree of psychological certainty" that Appellant had a "mental disorder" at the time he pled guilty. Vandenberg described the disorder as: "Bipolar disorder. The older terminology is manic depressive, a mild manic state at the time." However, said Vandenberg, "I don't think he was psychotic at the time." Instead, opined Vandenberg, Appellant was suffering from a "mild to moderate manic episode."

According to Vandenberg, one characteristic of a person experiencing a manic episode is that their judgment "is right out of the window." That is, "[E]very single thing they do would be affected by poor judgment."

Vandenberg was asked whether, after reviewing the transcript of the guilty plea proceeding, he could determine whether Appellant was "competent to . . . appreciate and understand the legal proceeding against him and the consequences of his decision on the date on which he pled guilty, which was January 13th, 1993." Vandenberg respond-

ed, "I don't think he was." Vandenberg was also asked whether a "lay person" could have detected that Appellant suffered from "any sort of mental disorder" on the day he pled guilty. Vandenberg replied, "If he has the degree that I think he had under the circumstances, probably not."

Vandenberg's testimony can be reasonably understood to mean that a person afflicted with bipolar disorder is not constantly in a manic state, and that the poor judgment which accompanies a manic state does not persist when the manic episode ends. Vandenberg explained, "There are periods between manic episodes and between depressive episodes with this disorder that the individual basically is normal."

Thus, the issue raised by Vandenberg's testimony was whether Appellant was experiencing a manic episode at the time he pled guilty. In that regard, the prosecutor's cross-examination of Vandenberg included this:

"Q As I understand your testimony, Doctor, you cannot point to a sentence in the transcript [of the guilty plea proceeding] upon which you rely on your conclusion; is that correct?

A No. The information is the concise information from my interview.

Q In your interview, not in the transcript, nothing in the transcript?

A Not the words in the transcript, no.

. . . .

Q Did [Appellant] also tell you that that plea bargain involved the dismissal of charges that could have, had he been convicted, resulted in him doing many times that [twenty years]? I did a calculation here. I think total charges, had he been convicted on all of them, he faced over 200 years.

A No, I knew there were other charges. I didn't know how many or what the potential time was for them.

Q But he didn't tell you about that?

A No, I didn't ask.

Q Couldn't he have rationally accepted that plea bargain knowing that he faced those other years, the additional years in

order to cut the amount of time he possibly faced on a trial?

A It is possible, sure."

The motion court's findings of fact included this:

"Dr. Vandenberg testified that he could not point to any specific answer or response contained in the transcript of Movant's pleas which would indicate that the Movant was manic at the time Movant entered his pleas. Dr. Vandenberg also testified that he had not reviewed any other material prepared contemporaneously with the pleas when forming his opinion as to Movant's mental state at the time Movant entered his pleas. Dr. Vandenberg testified that in his opinion Movant was in the midst of [a] manic episode at the time Movant entered his pleas of guilty.

... There is no indication from the transcript of Movant's pleas that he was suffering from the effects of a mental disease or defect at the time he entered his pleas."

The motion court's conclusions of law included this:

"The transcript of the pleas indicates that Movant intelligently and voluntarily entered his pleas of guilty in that there is insufficient evidence that Movant was experiencing a manic episode at the time he entered his pleas of guilty. The transcript of the guilty pleas indicates that Movant was aware that in the past he suffered from manic aggression and manic depression but at the time of his pleas his mental health was good. Movant indicated as well that at the time Movant entered his pleas that he was not having symptoms which would require his taking any medication at that time. Dr. Vandenberg's testimony was unpersuasive in that Dr. Vandenberg could not testify that upon his review of the pleas of guilty that there was any specific indication that Movant [was] in the midst of a manic episode. Accordingly, there is insufficient evidence that Movant received ineffective assistance of counsel."

Appellate review of the motion court's judgment is limited to a determination of whether the findings and conclusions of that court are clearly erroneous. Rule 24.035(j); *State v. Nunley,* 923 S.W.2d 911, 922[24] (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). The appellate court deems the findings and conclusions clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Id.*

■ The standard for determining an accused's competence to plead guilty is essentially the same as that for determining whether he is competent to proceed to trial. *State v. Hunter,* 840 S.W.2d 850, 863[17] (Mo. banc 1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). An accused is competent to plead guilty if he can rationally consult with counsel and the court and understands the proceedings against him. *Id.*

■ Vandenberg's testimony, if found persuasive by the motion court, would have arguably supported a finding that Appellant, at the time he pled guilty, was unable to understand the proceedings against him or assist in his defense. However, the motion court was not compelled to accept Vandenberg's opinion that Appellant was experiencing a manic episode when he pled guilty. *Harry v. State,* 800 S.W.2d 111, 115[8] (Mo. App. E.D.1990). Credibility of witnesses in a post-conviction proceeding is for the motion court's determination. *State v. Glessner,* 918 S.W.2d 270, 282[16] (Mo.App. S.D.1996). The motion court can disbelieve testimony even where uncontradicted. *Id.*

Furthermore, Appellant pled guilty the day after his escape. As reported earlier in this opinion, Appellant articulated a comprehensive account of the escape and his activities while at large. Some of the details were supplied by Appellant in response to questions, but most of the details came from narratives by Appellant in his own words. Appellant's renditions were clear, thorough and uncontradicted by the prosecutor.

Appellant's remarks during the guilty plea proceeding bespeak an awareness of his manic aggressive and manic depressive condition, and a familiarity with the side effects of the prescribed medication. Nothing Appellant

said even remotely indicated his disorder deprived him of the mental acuity to understand the nature of the proceedings or assist in his defense.

The motion court could have reasonably found, as it did, that the record of the guilty plea proceeding was a more accurate indicator of Appellant's mental condition at the time he pled guilty than Vandenberg's testimony, which was based on a two-hour evaluation of Appellant forty months later. We therefore hold the motion court did not clearly err in finding (1) Appellant intelligently and voluntarily entered his pleas of guilty, and (2) there is insufficient evidence that Appellant was experiencing a manic episode at the time of the pleas.

In so holding, we do not ignore *Hemme v. State*, 680 S.W.2d 734 (Mo.App. W.D.1984), cited by Appellant. The facts in *Hemme* are too different from those here for that case to be controlling. There, the accused had a long history of treatment for mental problems, had repeatedly attempted suicide, and was a patient receiving treatment at a mental hospital at the time of the alleged offense. *Id.* at 736. There was no proof of any such circumstances here.

We therefore reject Appellant's claim that he was denied his right to due process of law because he lacked the capacity to understand the proceedings against him and to assist in his defense at the time he pled guilty.

We likewise find no merit in Appellant's claim that the lawyer who represented him in the plea court rendered ineffective assistance in failing to request a mental examination.

It is not incumbent upon an accused's lawyer to conduct such a thorough and searching examination of an accused as to pry out of him every facet of his past life, on the chance that an exhaustive interrogation might possibly elicit some pertinent fact. *Chapman v. State*, 506 S.W.2d 393, 395 (Mo. 1974). In discussing the case with an accused and his interested relatives (if any), counsel may reasonably assume that in the ordinary course of events he or they will freely divulge pertinent facts bearing upon the accused's mental condition. *Id.* In the absence of some warning sign or suggestion of mental aberration, there is no absolute or routine duty on counsel to initiate an independent investigation of the mental condition of an accused. *Id. Accord: Ketcherside v. State*, 842 S.W.2d 182, 183[3] (Mo.App. E.D. 1992).

There is no evidence in the record that Appellant's lawyer ("plea counsel") knew, prior to the guilty pleas, that Appellant had bipolar disorder and was under a doctor's order to take medication for it.[3] Additionally, as we have seen, Vandenberg avowed a "lay person" would "probably not" have detected that Appellant suffered from "any sort of mental disorder" on the day he pled guilty. It is thus arguable that Appellant manifested no "warning sign or suggestion of mental aberration." *Chapman*, 506 S.W.2d at 395[2].

However, even if plea counsel was remiss in failing to request a mental examination, Appellant has failed to demonstrate he was prejudiced thereby. In order to demonstrate prejudice, Appellant had to show that at the time he pled guilty, he could not rationally consult with plea counsel and understand the proceedings against him. The only evidence supportive of that hypothesis—Vandenberg's testimony—was found unpersuasive by the motion court.

Having failed to demonstrate prejudice, Appellant is entitled to no relief for the alleged ineffective assistance of counsel. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

Judgment affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

3. As reported earlier, Vandenberg was the sole witness in the motion court. Appellant did not testify and did not call plea counsel as a witness.