**Robert HOLMAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 79665.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 3, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 24, 2002.

Application for Transfer Denied
Nov. 26, 2002.

Gwenda Renee Robinson, Assistant Public Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for respondent.

GLENN A. NORTON, Judge.

Robert Holman appeals the denial of his Rule 29.15 post-conviction motion after an evidentiary hearing. He contends that his appellate counsel was ineffective for not asserting the trial court's error in failing, *sua sponte*, to order a mental competency examination before his sentencing. Holman also claims that his trial counsel was ineffective for failing to investigate his mental state. We affirm.

## I. FACTS

Holman was charged with one count of forgery and one count of making a false declaration. Holman and his attorney, Joseph Green, had difficulty in their relationship—before trial, it deteriorated to the point that Holman refused to speak to Green regarding his case and told him he would be getting a new attorney. Holman said he thought Green was working with the prosecutor. Green filed a motion to withdraw, which was denied.

On the morning of trial, Holman appeared with Green before the Hon. Phillip J. Sweeney requesting new trial counsel. Holman and the court had the following exchange:

THE COURT: Mr. Holman, we were just here this morning to make a record. State's ready to proceed and so is your lawyer.

Mr. Green tells me you don't want him for a lawyer anymore and that request will be denied.

The other thing is you want to do this the easy way or the hard way? Now, we can try this case with you, if you want to get dressed in some street clothes, which Mr. Green has brought along, and that will make it a lot nicer for the jury and everybody else.

On the other hand if you want to do it the hard way, we'll show you as not willing to cooperate, and I'm not going to keep you here bound and gagged at the counsel table, I think it's even more prejudicial to your case, so we'll have a photograph of you sitting where your seat is. What do you want to do?

THE DEFENDANT: You do what you got to do.

THE COURT: Your just going to maintain the same contumacious attitude, huh?

THE DEFENDANT: No, for one, he didn't want to be bothered with me. And two, people up there gave this to me right here. This is not my paperwork, this is his, and this is supposed to be the land of opportunity.

THE COURT: Let me tell you something. I don't know you, I've never seen you before as far as I know. I do know Mr. Green, I've dealt with him for years and years.

THE DEFENDANT: I know.

THE COURT: Let me say something. I have known him for years and years as a trial lawyer. He's a very good trial lawyer and he's never done anything but represent his clients to the fullest. That is what I go by. I don't care how many papers you have. Doesn't make any difference with me.

THE DEFENDANT: Whatever you say, whatever you say. I'd like to speak with my family members and stuff.

THE COURT: You can do that. But according to the rules and regulations.

THE DEFENDANT: Mother fuckin' fact—I want my mother fuckin' 40 acres. This is bullshit. You know you can't have me keep this man up there and shit like that. 12 mother fuckin' jurors and stuff.

At this point, the court instructed the court reporter to stop transcribing the repeated use of expletives. Three large transportation officers physically restrained and removed Holman from the courtroom. Holman was not returned to the courtroom that day because of his agitated state.

The next day, during a conference in chambers, Green stated that he discussed with Holman his right to testify or not to testify and the possible ramifications of each. Green stated that he advised Holman that if he chose to testify, then he would be subject to cross-examination

about his prior criminal history. Green stated that after this discussion Holman decided not to testify.

During another conference in chambers that afternoon, the court determined that Holman would not be cooperative at trial and Green agreed. Green told the court that he discussed with Holman his behavior and the prospect of returning to the courtroom. Holman told Green that he did not want to participate in trial at that time, he did not want the trial to go forward, and he would not testify because he did not want the jury to know about his prior convictions. The trial commenced in Holman's absence, and the jury convicted him on one count of forgery.

During his representation of Holman, Green learned that Holman had a history of seizures for which he takes medication and that he sustained a serious head injury in the past. Holman receives Social Security disability benefits, but Green did not know for what disability. Nothing indicated to Green that Holman had a mental disease or defect; Green believed that Holman understood their conversations about trial strategy.

Before sentencing, Green learned that a federal court had ordered a mental evaluation of Holman in an unrelated criminal case. Green asked for a continuance of sentencing until the results were known. The court denied the request and sentenced Holman to twenty years. Holman's conviction was affirmed by this Court in *State v. Holman*, 992 S.W.2d 219 (Mo.App. E.D.1999). Holman timely filed a motion to vacate, set aside, or correct the judgment or sentence under Rule 29.15. The motion court denied Holman's motion after an evidentiary hearing. This appeal follows.

## II. STANDARD OF REVIEW

Our review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *State v. Williams,* 861 S.W.2d 670, 675 (Mo.App. E.D.1993); Rule 29.15(k). Findings of fact and conclusions of law are deemed clearly erroneous only if, after review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Williams,* 861 S.W.2d at 675.

In order to establish ineffective assistance of counsel, Holman must prove that counsel's performance was so deficient that it fell below objective standards of reasonable competence and that counsel's performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Holman must establish that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Rousan v. State,* 48 S.W.3d 576, 581 (Mo. banc 2001). He has the burden of proving post-conviction relief claims by a preponderance of the evidence. *Burton v. State,* 68 S.W.3d 490, 493 (Mo.App. E.D.2001); Rule 29.15(i).

## III. DISCUSSION

### A. Ineffective Assistance of Appellate Counsel

In his first point, Holman asserts that the motion court erred in denying his claim of ineffective assistance of appellate counsel due to counsel's failure to raise a claim on direct appeal that the trial court erred in failing, *sua sponte*, to order a competency examination. Holman claims that counsel should have recognized that the trial court plainly erred by not ordering a mental evaluation after his outburst at the beginning of trial or after Green informed the court of the federal psychiatric evaluation.

■ "The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as that employed with trial counsel; movant is expected to show both a breach of duty and resulting prejudice." *Helmig v. State,* 42 S.W.3d 658, 682 (Mo.App. E.D.2001), *see also Franklin v. State,* 24 S.W.3d 686, 690–91 (Mo. banc 2000). Holman must establish that counsel failed to assert a claim of error that would have required reversal had it been brought and was so obvious from the record that a reasonably competent attorney would have recognized and asserted it. *Helmig,* 42 S.W.3d at 682.

When Amy Bartholow, Holman's appellate attorney, reviewed the record on appeal, she did not perceive error in the trial court's failure to order a competency exam. She testified that when reading the transcript, the issue did not "jump out" at her. Bartholow thought Holman's outburst before trial reflected his frustration that the judge would not allow him to change attorneys. In her judgment, other issues were more likely to result in reversal, namely Holman's absence from the trial. Bartholow also raised the trial court's failure to grant Holman's motion to suppress statements made before he was advised of his Miranda rights.

■ "We evaluate the challenged conduct from counsel's perspective at the time." *Burton,* 68 S.W.3d at 493. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Here, this presumption is not overcome. Appellate counsel has no duty to present every issue asserted in the motion for new trial, where he or she strategically decides to cull some arguments in favor of others. *Helmig,* 42 S.W.3d at 682. Culling issues that are not likely to result in reversal promotes judicial economy by focusing the Court's attention on those issues most pertinent to resolving the case. As in *Helmig,* we find that counsel was not ineffective for briefing preserved issues rather than briefing unpreserved issues that could only be considered under the plain error standard. *Id.* Bartholow exercised the customary skill and diligence that a reasonably competent attorney would have exercised in similar circumstances by choosing to raise only those issues most likely to result in reversal.

■ Furthermore, Holman has not established that had the trial court's error regarding the mental exam been raised on appeal, the conviction would have been reversed. *See Franklin,* 24 S.W.3d at 691. Bartholow would have had to argue this issue as plain error because it was not preserved in Holman's motion for new trial. *See State v. Kinder,* 942 S.W.2d 313, 323 (Mo. banc 1996); *see also* Rule 30.20. "An attorney will not be held to be ineffective for failing to raise an unpreserved error on appeal." *See Honeycutt v. State,* 54 S.W.3d 633, 650 (Mo.App. W.D.2001). This Court undertakes review for plain error only where manifest injustice or a miscarriage of justice would otherwise result. Rule 30.20. Holman has not shown that we would have undertaken plain error review in this case.

■ If we had undertaken plain error review, it is unlikely that plain error would have been found. We will discuss *ex gratia* how we likely would have resolved this issue. "A judge must order psychiatric or psychological exams when he or she has 'reasonable cause to believe that the accused lacks mental fitness to proceed.' In order to necessitate a *sua sponte* order for a competency hearing,

there must be some information, evidence, or observation that triggers the statutory requirement of 'reasonable cause.'" *State v. Tokar*, 918 S.W.2d 753, 763 (Mo. banc 1996) (quoting section 552.020 RSMo (2000)). Trial courts are vested with broad discretion with regard to ordering a mental examination. *State v. Sharkey*, 821 S.W.2d 544, 545 (Mo.App. E.D.1991). "Sufficient cause for investigation does not exist if an accused has the present ability to consult with his lawyer with rationality and to understand the proceedings against him." *State v. Messenheimer*, 817 S.W.2d 273, 278 (Mo.App. S.D.1991) (citing Shelley v. State, 655 S.W.2d 126, 128 (Mo.App. E.D.1983)).

▆▆▆ Here, it does not appear that the failure to order an exam in light of Holman's pre-trial outburst and the federal court's decision to order an exam was a manifest injustice or miscarriage of justice. *See, e.g., Howard v. State*, 698 S.W.2d 23, 25–26 (Mo.App. S.D.1985) (no abuse of discretion even where defendant "ranted, and raved," and "ate" his pre-sentence investigation report). Green relayed to the court that Holman had the ability to consult with Green and understand the proceedings. It is very unlikely that we would have found that the court plainly erred in failing to order a competency exam, and thus appellate counsel's failure to raise this issue did not prejudice Holman.

The motion court's findings and conclusions are not clearly erroneous. Appellate counsel was not ineffective.

Point I is denied.

## B. Ineffective Assistance of Trial Counsel

In his second point, Holman asserts that his trial counsel was ineffective for failing to investigate his mental state and request a mental evaluation. Holman argues that Green's knowledge of the following should have alerted Green to the need for a mental evaluation: his seizure disorder, his receipt of disability benefits, a previous blow to the head, the breakdown in the attorney-client relationship, his delusional belief that Green was working for the prosecutor, his emotional outburst before trial, his forcible removal from the courtroom, his refusal to dress for or attend his own trial and his pending federal competency hearing. Holman claims that Green should have discussed his prior history with family members and obtained records from the Department of Corrections and the Social Security Administration. This investigation, Holman asserts, would have revealed that Holman has a low IQ and a seizure disorder and called his competency into question. But it appears that most of the physical manifestations Holman says pointed to his mental instability could be, and probably were, taken as indicia that Holman was a frustrated and uncooperative person.

▆▆▆ To demonstrate that trial counsel was ineffective for failing to investigate Holman's mental competence, Holman must show facts sufficient to indicate he possessed a questionable mental condition. *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997). "If counsel for the accused comes to an honest belief that his client lacks present capacity for rational understanding and cooperation, he is under a duty to obtain adjudication of the issue because the ongoing criminal conviction process relies on the absence of doubt by defense counsel as to the client's competency." *Hemme v. State*, 680 S.W.2d 734, 736 (Mo.App. W.D.1984). But "[c]ounsel has no duty to investigate a client's mental condition where the client appears to have the present ability to consult rationally with the attorney and understand the court proceedings." *Clayton v. State*, 63 S.W.3d 201, 209 (Mo. banc 2001). There

must have existed some suggestion that Holman was mentally unstable to impose on Green a duty to initiate an investigation of Holman's mental condition. *See State v. Powell*, 793 S.W.2d 505, 509 (Mo.App. E.D. 1990).

 Green testified at the evidentiary hearing that he was aware of Holman's seizures and Social Security benefits, but those facts did not lead him to believe that Holman was suffering from a mental disease or defect. Green did not know why Holman received disability benefits. Even if the benefits related to a mental condition and Green knew about it, that would not necessarily impose a duty on him to investigate Holman's mental fitness. *See Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App. S.D.1998) ("unable to hold that, as a matter of law, counsel is ineffective if he or she knows that his or her client is receiving disability checks for a mental condition, and he or she fails to investigate that person's mental fitness to proceed.") Green also knew that Holman had suffered a head injury, but not that there were any long-term effects. Green was not ineffective for failing to investigate the details of the head injury, seizures or disability benefits. "In discussing a case with an accused and his relatives (if any), counsel may reasonably assume that in the ordinary course of events he or they will freely divulge pertinent facts bearing upon the accused's mental condition." *Chambers v. State*, 958 S.W.2d 66, 70 (Mo.App. S.D.1997). Green testified that he spoke with Holman's mother, but she did not give him any information that Holman was mentally retarded or delusional.

Green testified that he did not associate Holman's belief that Green was in cahoots with the prosecutor with a mental disease or defect. Green believed that Holman was angry because he felt that he was being railroaded into trial. To Green, Holman's outburst and behavior on the morning of trial indicated anger and frustration because he was not allowed to change lawyers.

Most importantly, Green testified that he and Holman communicated about different defense strategies and that Holman appeared to comprehend those discussions. Green stated that Holman was able to respond in a reasonable manner to questions asked of him. Even after the outburst, Holman was able to understand their communications.

In sum, Green testified that there was nothing during his contact with Holman that indicated to him that he was suffering from a mental disease or defect. The motion court found Green's testimony credible and relied on that. We defer to the motion court's credibility determinations. *Estes v. State*, 950 S.W.2d 539, 541–42 (Mo.App. E.D.1997). We will not disturb the court's choice of Green's testimony over testimony from Holman's mother (she claimed that she told Green Holman was "sick" and on disability) and recent mental examinations concluding that Holman was mentally retarded and had a low IQ.[1]

Again, we find that the motion court's findings and conclusions are not clearly erroneous.

Point II is denied.

1. If any of these exams are even relevant to whether Green was ineffective, we agree with the trial court's conclusion that the more pertinent one was the federal evaluation conducted at the time of Holman's sentencing-not the exams conducted years later for the Rule 29.15 motion. The federal exam concluded that Holman did not suffer from psychotic symptoms, he was not paranoid, his speech was clear and comprehensible and his memories were intact.

## IV. CONCLUSION

The judgment is affirmed.

WILLIAM H. CRANDALL, JR., P.J. and SHERRI B. SULLIVAN, J. concurring.