Richard WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 61791.

Missouri Court of Appeals,
Western District.

Aug. 5, 2003.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, III, and Richard A. Starnes, Jefferson City, MO, for Respondent.

Before JAMES M. SMART, P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT ULRICH, Judge.

Richard Williams ("Mr.Williams") appeals the judgment of the motion court denying his Rule 29.15 motion for postconviction relief following an evidentiary hearing. Mr. Williams sought to vacate his conviction for driving while intoxicated, section 577.010, RSMo 2000, and his sentence of eight years as a prior and persistent offender. Mr. Williams raises one point on appeal claiming ineffective assistance of trial counsel. The judgment of the motion court is affirmed.

**Factual and Procedural Background**

Officer Shelley Jones of the Columbia, Missouri, Police Department was at a Break Time gas station on February 26, 2000, at about 11:00 p.m. when she observed Mr. Williams driving a blue minivan out of the parking lot without its headlights or tail lights turned on. Officer Jones followed Mr. Williams out of the parking lot and activated her emergency lights. When Mr. Williams did not pull his van over to the side of the road, Officer Jones activated the police vehicle's siren. Mr. Williams continued driving down the street, weaving and swaying within his lane of traffic. About a mile later, Mr. Williams pulled into a parking lot. He had been driving about 25 to 30 miles per hour in a 35 mile an hour speed zone.

Officer Jones told Mr. Williams to roll down his window. She had to repeat herself between five and ten times before Mr. Williams responded by yelling that the windows were electric. Officer Jones told Mr. Williams to start the ignition so that he could roll down the windows. She had to repeat herself several times. Another officer who had arrived on the scene used the public announcement system on his police car to tell Mr. Williams to roll down the windows of his vehicle and throw his keys outside the van. This officer had to repeatedly give the directive over the PA system before Mr. Williams responded. When Mr. Williams eventually complied, the officers rushed the van, opened the door, and pulled him out of the van.

Upon Mr. Williams exiting the vehicle, police observed that his speech was slurred, he appeared incoherent, his pupils were contracted, and his eyes were staring and bloodshot. At one point during the stop, Officer Jones observed Mr. Williams' eyes roll back so that she could see the whites of his eyes. Officer Jones testified that she believed that he was under the influence of a controlled substance because she did not smell any alcohol on him. She did not conduct a field sobriety test because Mr. Williams has a prosthetic leg.

Mr. Williams had difficulty walking and standing once he was outside his vehicle. He was swaying and wobbly. The officers at the scene had to assist him to keep him from falling. Officer Jones testified that she believed that his inability to stand without swaying was in excess of what she would expect from a person with a prosthetic leg. Mr. Williams exhibited major mood swings during the stop. He went from being cooperative to uncooperative and, at one point, became so violent officers had to restrain him. After placing him in the back seat of the patrol car,

Officer Jones took him to the Columbia, Missouri, police station.

At the police station, Officer Jones advised Mr. Williams of his Miranda rights and the Missouri Implied Consent Law, section 577.041, RSMo 2000, and asked if he would submit to a chemical test of his urine. He consented to a urine test. When asked if he was on drugs, Mr. Williams admitted to having taken LSD. At that point, he became violent, yelling and screaming, and swinging his arms around. Officer Jones placed him in a holding cell until he calmed down. As he was being placed into the cell, Mr. Williams again admitted that he had taken LSD. After Mr. Williams calmed down, another officer, Mike Youtsey, took him from the cell and to the restroom to collect a urine sample. Once they were in the restroom, Officer Youtsey asked Mr. Williams to provide a urine sample. Mr. Williams did not respond. When Officer Youtsey asked Mr. Williams a second time if he would provide a urine sample, Mr. Williams loudly screamed twice that he would not give a sample. Both Officer Jones and Officer Youtsey testified that they believed that Mr. Williams was intoxicated and incapable of operating a motor vehicle.

Mr. Williams was charged by information with the Class D felony of driving while intoxicated, section 577.010, RSMo 2000. His cause was tried before a jury on January 23, 2001, in the Circuit Court of Boone County. The jury found Mr. Williams guilty of driving while intoxicated. A pre-sentence investigation was ordered. At the request of Mr. Williams' trial counsel, the Board of Probation and Parole did not interview Mr. Williams. Much of the information for the PSI report was taken from a PSI report in a previous case. The prior PSI report indicated that Mr. Williams had a significant history of

psychiatric illness and hospitalization and suffered from paranoid schizophrenia and bipolar disorder. It also stated that he was a regular user of alcohol and had experimented with marijuana, LSD, MDA, opium, and cocaine. The trial court sentenced Mr. Williams as a prior and persistent offender to a prison term of eight years.

Mr. Williams filed a notice of appeal of his conviction on March 8, 2001. This court affirmed his conviction on November 27, 2001, pursuant to Rule 30.25(b). *State v. Williams,* 62 S.W.3d 97 (Mo.App. W.D., 2001).

On December 20, 2001, Mr. Williams filed a pro se motion to vacate, set aside, or correct his judgment or sentence. Counsel was appointed and filed an amended motion, alleging, *inter alia,* that Mr. Williams' trial counsel was ineffective for failing to investigate his mental illness and present evidence of his mental illness as an alternative explanation for his behavior on February 26, 2000. An evidentiary hearing on Mr. William's postconviction relief motion was held on May 10, 2002. Mr. Williams, his trial counsel, and Dr. Bruce Harry, a staff psychiatrist at Fulton State Hospital, testified at the hearing. The motion court submitted findings of fact and conclusions of law denying Mr. Williams' motion on June 13, 2002. This appeal followed.

## Standard of Review

Appellate review of the denial of a postconviction motion is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Middleton v. State,* 80 S.W.3d 799, 804 (Mo. banc 2002); Rule 29.15(k). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, an appellate court is left with a definite and firm impression that a

mistake has been made. *Barnum v. State,* 52 S.W.3d 604, 607 (Mo.App. W.D.2001) (citing *Moore v. State,* 827 S.W.2d 213, 215 (Mo. banc 1992)). The motion court's findings are presumed correct. *Potts v. State,* 22 S.W.3d 226, 229 (Mo.App. W.D.2000) (citations omitted).

The movant has the burden of proving the movant's claims for relief by a preponderance of the evidence. Rule 29.15(i). To prevail on an ineffective assistance of counsel claim, a movant must show that trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances and that he was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs must be satisfied. *Sidebottom v. State,* 781 S.W.2d 791, 795–96 (Mo. banc 1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Failure to satisfy either prong results in the reviewing court not considering the other. *Id.*

A movant has a heavy burden in establishing the first prong of the test because there is a strong presumption that counsel provided competent assistance. *Gardner v. State,* 96 S.W.3d 120, 122 (Mo.App. W.D. 2003) (citing *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002)). To satisfy the first prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Deck,* 68 S.W.3d at 426 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674). A movant can do this by pinpointing specific acts or omissions of counsel that resulted from unreasonable professional judgment. *Id.* As to the second prong, a movant must demonstrate a reasonable probability that, but for his trial counsel's unprofessional errors, the result of the proceeding would have been different. *Wolfe v. State,* 96 S.W.3d 90, 93 (Mo. banc

2003) (citing *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998)). A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

## Analysis

■ Mr. Williams' sole point on appeal claims that the motion court clearly erred in denying his Rule 29.15 motion for postconviction relief because his trial counsel was ineffective for failing to investigate his mental condition. Specifically, he claims that his trial counsel had a duty to investigate whether he had a mental illness because she suspected that he had a learning disability. Mr. Williams asserts that an investigation would have revealed that he suffered from schizophrenia and bipolar disorder. He contends that he was prejudiced by his trial counsel's failure to investigate his mental illness because she could have presented his mental illness to the jury as an alternative explanation for his behavior. Mr. Williams claims that such evidence would have led to his acquittal.

■ Trial counsel's failure to investigate Mr. William's mental illness does not automatically entitle Mr. Williams to postconviction relief. In order to prevail on his claim, Mr. Williams "must show the existence of a factual basis indicating a questionable mental condition that should have caused his attorney to initiate an independent investigation of [his] mental state." *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997) (quoting *State v. Richardson*, 923 S.W.2d 301, 328 (Mo. banc), *cert. denied*, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996)). Trial counsel has no duty to instigate an investigation of the accused's mental condition in the absence of some suggestion of mental instability. *State v. Richardson*, 923 S.W.2d at 328 (citing *State v. Skelton*, 887 S.W.2d 699, 706 (Mo.App. S.D.1994)). An investigation

is unnecessary when an accused has the ability to rationally consult with his attorney and understand the court proceedings. *Clayton v. State*, 63 S.W.3d 201, 209 (Mo. banc 2001) (citing *Richardson*, 923 S.W.2d at 328); *see also Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App. S.D.1998). Appellate review of the reasonableness of trial counsel's conduct is viewed from counsel's perspective at the time and not from hindsight. *Baird v. State*, 906 S.W.2d 746, 749 (Mo.App. W.D.1995).

■ In this case, trial counsel testified during postconviction proceedings that Mr. Williams appeared competent, was able to assist with his defense, and exhibited no unusual behaviors. She testified that not only did he exhibit no outward manifestations of a mental illness but he also denied being diagnosed with a mental illness or being on medication for the same. Trial counsel's relevant testimony follows:

Q. [D]id you meet with your client prior to trial?

A. Yes.

Q. Did you speak with him prior to trial?

A. Yes.

\*     \*     \*     \*     \*     \*

Q. During your meetings with him, did you notice any unusual statements made by him?

A. I did not notice any unusual statements, no.

Q. Did you notice any unusual behaviors by him?

A. His speech seemed to be a little slow which can sometimes be indicative of a learning disability or other types of disabilities. And sometimes he didn't seem to be listening to what I said which could be an indication of again some type of disability. It could also be an indica-

tion of the fact that he didn't want to listen to what I was saying.

Q. Did you have to repeat things to him?

A. Occasionally.

Q. Did you take any steps to determine whether he in fact suffered from any type of learning disability based on your observation?

A. Well, the first thing I did was ask him if he had been diagnosed with any type of mental illness or other disability. And he denied being diagnosed as such.

Q. Did you do anything beyond that?

A. No. He seemed perfectly competent to me. I did not see a need.

\* \* \* \* \* \*

Q. And during these contacts [with Mr. Williams], did you believe that he was unable to assist in his own defense?

A. Not at all. He was clearly able to assist in his own defense and make decisions regarding it.

Q. And during your contact with him, did you ever consider requesting a 552 mental examination of him?

A. No.

Q. And why was that?

A. Well, first of all I felt that he was competent. Second, I had asked him about prior diagnosis. He said he didn't have any. I did not feel it was necessary.

\* \* \* \* \* \*

Q. And during the course of the trial, did you believe that you had effective communication with Mr. Williams?

A. During the course of the trial, yes.

Q. Did [Mr. Williams] appear to understand generally what was going on?

A. Absolutely.

On the basis of trial counsel's testimony, no factual basis existed sufficient to impose a duty upon her to initiate an investigation into Mr. Williams' mental condition. "In the absence of some warning sign or suggestion of mental aberration there is no absolute or routine duty on counsel to initiate an independent investigation of the mental condition of an accused." *Ketcherside v. State*, 842 S.W.2d 182, 183 (Mo.App. E.D.1992) (citing *Warren v. State*, 740 S.W.2d 251, 253 (Mo.App.1987)); (*Chapman v. State*, 506 S.W.2d 393, 395 (Mo. 1974)). None of the conduct that Mr. Williams exhibited in front of his trial counsel suggested a questionable mental state.

▮▮▮ Trial counsel had a right to assume that Mr. Williams would divulge any pertinent facts regarding his condition. "In discussing a case with an accused and his relatives (if any), counsel may reasonably assume that in the ordinary course of events he or they will freely divulge pertinent facts bearing upon the accused's mental condition." *Holman v. State*, 88 S.W.3d 105, 112 (Mo.App. E.D.2002) (quoting *Chambers v. State*, 958 S.W.2d 66, 70 (Mo.App. S.D.1997)). Here, trial counsel took a proactive role in determining whether Mr. Williams had a mental condition by specifically asking him if he had been diagnosed with a mental condition and was on medication for the same. "It is not incumbent upon an accused's lawyer to conduct such a thorough and searching examination of an accused as to pry out of him every facet of his past life, on the chance that an exhaustive interrogation might possibly elicit some pertinent fact." *Chambers*, 958 S.W.2d at 71 (citing *Chapman*, 506 S.W.2d at 395). Because Mr. Williams denied having any type of mental condition and nothing in his demeanor suggested otherwise, trial counsel was not ineffective for failing to conduct a more ex-

tensive investigation into his mental history.[1]

Mr. Williams asserts that his trial counsel should have known that he had a mental illness notwithstanding his denial. He claims that his trial counsel testified that she had a suspicion that he was mentally ill. Trial counsel testified that Mr. Williams' speech was slow and, at times, he appeared to not be listening to her. She testified that she believed that Mr. Williams had a learning disability or that he did not want to listen to what she was telling him. At no point during her testimony did trial counsel state that she believed Mr. Williams had a mental illness. Rather, she testified that he seemed competent to her and in light of his denial of having a mental illness, she did not see a need to investigate further.

Trial counsel's suspicions alone are insufficient to confer a duty upon her to investigate Mr. Williams' mental condition. In *Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App. S.D.1998), the Southern District held that plea counsel was not ineffective for failing to investigate appellant's mental fitness even though counsel was aware of the fact that his client had been receiving disability checks for a mental condition. Rather, the court held that the test to be employed was "whether [a movant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, 825 (1960)). Similarly, the

Eastern District held where counsel knew that appellant was receiving disability benefits related to a mental condition, it did not impose a duty upon counsel to investigate appellant's mental fitness. *Holman*, 88 S.W.3d at 112 ("Even if the [disability] benefits related to a mental condition and [counsel] knew about it, that would not necessarily impose a duty on him to investigate [appellant's] mental fitness."). Here, trial counsel did not have as much information as the trial counsel in either *Henderson* or *Holman*. She merely suspected that Mr. Williams might be learning disabled. If knowledge of an appellant's receiving disability checks due to a mental condition is insufficient to confer a duty upon counsel to investigate the appellant's mental fitness, then suspicions of appellant's learning disability are equally insufficient to confer such a duty. For that reason, Mr. Williams' trial counsel was not ineffective for failing to investigate his mental condition further.

Mr. Williams next contends that his trial counsel had access to a 1996 pre-sentence investigation report detailing the history of his mental illness because Mr. Williams was represented by the same Public Defender's office in a previous case. The evidence established that the pre-sentence investigation report was archived. Trial counsel testified that she did not see a need to retrieve the file. Because trial counsel did not have a factual basis for concluding that Mr. Williams had a mental disease, it was not incumbent upon her to investigate the 1996 pre-sentence investigation report.

---

1. Mr. Williams cites *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.1991), for the proposition that trial counsel may be found ineffective for failing to perform an adequate investigation. His reliance on this case is misplaced. As established above, Mr.

Williams' trial counsel had no reason to investigate his mental condition in the absence of a questionable mental state and in the face of his denials of having been diagnosed with a mental illness.

Mr. Williams' final contention is that trial counsel failed to ask him if he had a mental illness. Trial counsel testified that she specifically asked Mr. Williams if he had been diagnosed with a mental illness and was on medication for the same. He unequivocally denied both. The motion court found trial counsel's testimony credible. The relevant finding states:

This court finds the testimony of [trial] counsel credible and further finds that [Mr. Williams] did not tell her that he was taking medications before or at the time of the criminal trial. Also, this Court finds that because of [Mr. Williams'] interaction with trial counsel and his prior convictions and incarceration, it was reasonable for trial counsel to believe that [Mr. Williams] was competent and not suffering from a mental disease or defect.

Appellate courts defer to the motion court's determination of credibility. *Colbert v. State,* 7 S.W.3d 471, 474 (Mo.App. W.D.1999) (citations omitted). The motion court found trial counsel's testimony regarding whether she asked Mr. Williams if he had a mental illness credible. The motion court's choice of trial counsel's testimony over Mr. Williams' will not be disturbed on appeal. *Holman,* 88 S.W.3d at 112. For that reason, this portion of Mr. Williams' argument is denied.

Mr. William's trial counsel was not ineffective for failing to investigate his mental condition. She testified that there was nothing during her interactions with Mr. Williams to indicate that he was suffering from a mental illness. Because Mr. Williams appeared to have the ability to rationally consult with his attorney and understand the court proceedings, his trial counsel did not have a duty to investigate his mental condition. Mr. Williams' lack of questionable mental state coupled with his denial of having a mental condition did not confer upon his trial counsel the duty to investigate his mental condition. The motion court's findings and conclusions are not clearly erroneous. Point denied.

The judgment of the motion court denying Mr. Williams' Rule 29.15 motion for postconviction relief is affirmed.

All concur.

