**Alexander NELSON, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. ED 96850.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 31, 2012.

Maleaner Harvey, Saint Louis, MO, For Appellant.

Chris Koster, Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, For Respondent.

## OPINION

GLENN A. NORTON, Judge.

Alexander Nelson appeals the judgment denying his Rule 29.15 [1] motion for post-conviction relief after an evidentiary hearing. We affirm.

## I. BACKGROUND

Nelson was charged with one count of criminal possession of a weapon, two counts of first-degree robbery, and two counts of armed criminal action. Before trial, Nelson filed several strangely-worded pro se motions with the court. [2] One of the motions called for the case to be dismissed because there was a military flag in the courtroom, which, according to Nelson, made the proceeding a court-martial. During pre-trial proceedings, the trial

---

1. All references to Rules are to Missouri Supreme Court Rules (2012).

2. For instance, some of Nelson's pro se motions featured certain symbols, such as the Moroccan flag (labeled by Nelson as "THIS FLAG OF ALL MOROCCO") and the unfinished pyramid seal found on U.S. currency (labeled by Nelson as "THIS *GREAT–PYRA-MID*–SEAL"). Beneath the symbols were several lines of bizarre language. One line read, "FOR THE PLANET OF THIS EARTH IS WITH THE SEA (AS A FLOAT) IN THE SPACE/HEAVEN." Another line read, "FOR THE UNION WITH THE SOVEREIGNS IS WITH THESE DOMINIONS/KINGDOMS OF ALL MOROCCO. FOR THE CLAIM OF OUR HOLY–SEER: NOBLE: :DrewAli: FOR THE ORIGINAL–MOABITES OF THE KHA MET–(OLD–MAN–KHAMS–LAND)–[ANCIENTEGYPT]."

court invited Nelson to speak about his pro se motions. Nelson then made a statement that contained and restated much of the strange language and phrasing from his pro se motions.

A jury trial took place in September 2007, which resulted in the jury finding Nelson guilty on all charges. The trial court sentenced Nelson as a prior and persistent offender to a total of thirty years in prison. On direct appeal, this Court affirmed Nelson's conviction and sentence. *State v. Nelson*, 278 S.W.3d 717 (Mo.App. E.D.2009). Subsequently, Nelson filed a timely Rule 29.15 motion for post-conviction relief, alleging that he was denied the right to effective assistance of trial counsel. Specifically, Nelson claimed that his trial counsel ("Counsel") rendered ineffective assistance by failing to request a psychological examination to determine Nelson's competency to stand trial under section 552.020 RSMo 2000[3] and section 552.030. Nelson argued that his "unreasonably voluminous" number of bizarre pro se motions, as well as his strange pre-trial statements in court, should have indicated to Counsel that Nelson was in need of a mental examination.

At the evidentiary hearing, Counsel testified that she did not request a psychological examination for Nelson because she was never concerned about Nelson's mental condition. Counsel also testified that she never felt that Nelson was unable to understand legal concepts or unable to assist in his defense. According to Counsel, Nelson spoke and acted normally every other time that they met during her multi-year representation[4] of him, and Counsel believed Nelson's strange behavior in court was simply a stall tactic. Additionally,

Counsel testified that she had believed that the bizarre motions were actually coming from Nelson's brother, Nick, who had insinuated himself into Nelson's case. Counsel stated that Nelson appeared to understand the process and the case against him because he had given her names of witnesses and had discussed with her certain strategies, such as filing a motion to sever.

Following the evidentiary hearing, the motion court denied Nelson's Rule 29.15 motion for post-conviction relief. In its findings of fact and conclusions of law, the motion court found that Counsel's failure to request a mental examination did not constitute ineffective assistance of counsel. The motion court found Counsel's testimony credible and determined that Counsel had no duty to investigate Nelson's mental state. Nelson appeals.

## II. DISCUSSION

### A. Standard of Review

■■■ We review the denial of a Rule 29.15 motion for post-conviction relief only to determine if the findings of fact and conclusions of law of the motion court are clearly erroneous. Rule 29.15(k); *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). Clear error exists "if, after reviewing the entire record, there is a definite and firm impression that a mistake has been made." *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010).

### B. The Motion Court did not Clearly Err in Denying Nelson's Rule 29.15 Motion for Post–Conviction Relief After an Evidentiary Hearing

In his sole point on appeal, Nelson claims the motion court erred in denying

---

**3.** All further statutory references are to RSMo 2000.

**4.** Counsel began representing Nelson in December 2004, meeting with him at least once

per month, and she met with him on a more regular basis leading up to Nelson's September 2007 trial.

his Rule 29.15 motion for post-conviction relief because Counsel was ineffective for failing to request a mental examination to determine Nelson's competency to stand trial under sections 552.020 and 552.030.[5] We disagree.

■ Courts apply the two-prong *Strickland* test in cases of post-conviction relief alleging ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Zink,* 278 S.W.3d at 175. To be entitled to post-conviction relief for ineffective assistance of counsel, Nelson must demonstrate that: (1) Counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) as a result, Nelson was prejudiced. *Zink,* 278 S.W.3d at 175. Nelson must overcome a strong presumption that Counsel's performance was reasonable and effective to meet the first prong of the test. *Id.* at 176. Moreover, our Court reviews the reasonableness of trial counsel's conduct not from hindsight but from counsel's perspective at the time. *Williams v. State,* 111 S.W.3d 556, 560 (Mo.App. W.D.2003). To satisfy the second prong, Nelson must show there is a reasonable probability that, but for Counsel's errors, the outcome of the proceedings would have been different. *Zink,* 278 S.W.3d at 176. Nelson must prove his claims for relief by a pre-ponderance of the evidence. *Id.* at 175; *see also* Rule 29.15(i).

■ In order to prove that trial counsel was ineffective by failing to investigate a defendant's mental competence, sufficient facts must be shown that indicate a questionable mental condition that should have caused counsel to investigate the defendant's mental state. *Williams,* 111 S.W.3d at 560. If trial counsel honestly believes that his client lacks the present capacity to rationally understand and cooperate, he has a duty to investigate the client's mental condition. *Holman v. State,* 88 S.W.3d 105, 111 (Mo.App. E.D. 2002). However, this duty does not exist when the defendant appears to be able to "consult rationally with the attorney and understand the court proceedings." *Id.* (quoting *Clayton v. State,* 63 S.W.3d 201, 209 (Mo. banc 2001)). This duty is not triggered unless there is some suggestion that the defendant is mentally unstable. *Holman,* 88 S.W.3d at 111–12.

■ Here, Nelson claims Counsel was ineffective because she failed to request a mental examination to determine whether he was competent to stand trial. Nelson emphasizes two aspects of his pre-trial behavior that should have caused concern over his mental condition. First, leading up to trial, Nelson filed several odd pro se motions comprising hundreds of pages of strangely-worded documents that made little sense. Second, when asked to address

---

**5.** Section 552.020.1 provides, "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Section 552.030.1 provides, "A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." A defendant is competent to stand trial as long as he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *State v. Johns,* 34 S.W.3d 93, 104 (Mo. banc 2000) (quoting *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). "In Missouri a defendant is presumed competent, and has the burden of proving incompetence by a preponderance of the evidence." *State v. Anderson,* 79 S.W.3d 420, 432–433 (Mo. banc 2002).

those motions in court, Nelson acted strangely, refusing to "swear to a fictitious oath" and reading a prepared statement that repeated some of the strange language from the motions. Nelson believes that Counsel should have requested a psychological examination for Nelson in response to this pre-trial conduct. Therefore, Nelson claims that Counsel's failure to request an examination rendered her services ineffective because he proceeded to trial "despite unresolved concerns about his mental thought processes when there [was] a reasonable probability he lacked the mental competency to stand trial," and this "undermined the fairness and confidence in the outcome of the proceedings."

As mentioned above, Counsel testified at the evidentiary hearing that she did not believe Nelson had any sort of questionable mental condition. Because Nelson had acted normally during his monthly meetings with Counsel, Counsel believed that the bizarre motions were the work of Nelson's brother and that Nelson's strange pre-trial behavior in court was simply a stall tactic. Further, nothing from Counsel's interaction with Nelson's family led her to believe that Nelson had any sort of mental issue. Additionally, Counsel testified that Nelson aided her in his defense strategy by providing names and contact information of witnesses and discussing how they could testify on his behalf. Nelson was also able to discuss with Counsel the possibility of filing a motion to sever so that he could testify to some of the charges but not others. Finally, Nelson appeared to Counsel to understand the relevant legal concepts and proceedings.

In its findings of fact and conclusions of law, the motion court found Counsel's testimony credible and determined that Counsel had no duty to initiate an investigation regarding Nelson's mental state, concluding that Nelson had failed to establish by a preponderance of the evidence any facts that supported his claims of having a questionable mental condition or receiving ineffective assistance of counsel. This Court defers to the "motion court's superior opportunity to judge the credibility of the witnesses." *State v. Twenter*, 818 S.W.2d 628, 635 (Mo. banc 1991).

We find that the motion court did not clearly err in finding that Nelson failed to prove his claim for post-conviction relief by a preponderance of the evidence. Nelson's sole point on appeal is denied.

### III. CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and SHERRI B. SULLIVAN, J., concur.